[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16336
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20354-DMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JHONATHAN TEJAS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 23, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Jhonathan Tejas appeals his 366-day sentence of imprisonment for theft of mail, in violation of 18 U.S.C. § 1708. On appeal, he argues that the district court erred in applying a few enhancements under the Sentencing Guidelines and in refusing to give him a reduction for acceptance of responsibility. We agree with Tejas that the enhancement for the number of victims, which was based on the application of a "special rule" in cases involving undelivered mail, did not apply on the specific facts of this case, so we vacate and remand for resentencing without that enhancement. We affirm the district court in all other respects.

## I.

On April 23, 2016, Tejas took an express mail package from the front seat of a United States Postal Service ("USPS") delivery vehicle and then ran off. Tejas had approached the vehicle and the USPS mail carrier to ask about the package, which he claimed was his. But because he was unable to produce ID which matched the name and address on the package[1], the mail carrier refused to release it to him. Instead, she put the package in the front of her vehicle and closed the door. Soon after, according to the mail carrier, Tejas grabbed her and slammed her into a nearby cluster mailbox, opened the door, took the package, and then ran off.

Tejas was indicted on three counts: robbery of a postal employee, in violation of 18 U.S.C. § 2114(a), assaulting a postal employee, in violation of 18

---

[1] The package was addressed to Davidson Galban. According to the trial testimony of Tejas's father, Tejas's full name is Jhonathan Davidson Tejas Galban.

2

U.S.C. § 111(a)(1), and theft of mail, in violation of 18 U.S.C. § 1708. Tejas pled not guilty and proceeded to trial. At trial, Tejas conceded that he had taken the package, but he disputed assaulting or harming the mail carrier. The jury found him guilty of theft of mail but not guilty of robbery and assault.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR") and calculated Tejas's guideline range using the 2015 Guidelines Manual. The probation officer applied several sentencing enhancements. Specifically, Tejas received (i) a two-level enhancement for an offense involving ten or more victims, under § 2B1.1(b)(2)(A)(i), based on a "special rule" in the commentary to § 2B1.1 which provides that theft of undelivered mail from a postal delivery vehicle "shall be considered to have involved at least 10 victims"; (ii) a two-level enhancement, under § 2B1.1(b)(3), because the offense involved theft from the person of another; and (iii) a three-level enhancement, under § 3A1.2(a), because the victim was a government officer or employee and the offense was motivated by that status. The probation officer calculated a total offense level of 13, which, combined with Tejas's criminal history category of I, established a recommended sentencing guideline range of 12 to 18 months of imprisonment.

Tejas objected to each of the enhancements. He also sought a reduction for acceptance of responsibility, claiming that he had never denied committing the only offense of which he was convicted.

At Tejas's sentencing, the district court heard argument from the parties on the objections. Ultimately, the court overruled Tejas's objections and adopted the guideline range recommended by the PSR. With regard to the number of victims, the court found that the special rule applied, despite agreeing with defense counsel's assertion that Tejas "only came in contact with . . . one very specific piece of mail." With regard to the enhancement for theft "from the person of another," the court credited the mail carrier's testimony that Tejas pushed her aside before grabbing the package from the front of the delivery van. With regard to the "official victim" enhancement, the court found the facts of this case comparable to our decision in *United States v. Bailey*, 961 F.2d 180 (11th Cir. 1992), where we upheld application of the enhancement. Finally, the court found that a reduction for acceptance of responsibility was not warranted because Tejas went to trial, and he denied pushing the mail carrier.

The district court sentenced Tejas to 366 days' imprisonment. Tejas now appeals.

## II.

We review *de novo* the interpretation and application of the Guidelines, and we review underlying factual findings for clear error. *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013). For a factual finding to be clearly erroneous, we must be left with a definite and firm conviction that the court made a

mistake.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

Language in the Sentencing Guidelines is given its plain and ordinary meaning.  *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011).  "The guidelines commentary is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Id.* (internal quotation marks omitted).

In general, relevant conduct of which a defendant was acquitted may be taken into account at sentencing, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence.  *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005).

### A.

Tejas first argues that the number-of-victims enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) did not apply in this case because the evidence was clear that the offense involved "one specific package."  We agree.

In general, a "victim" for purposes of § 2B1.1 is any person who sustained either actual loss or bodily injury as a result of the offense.  U.S.S.G. § 2B1.1 cmt. n.1.  When the offense involves theft of undelivered United States mail, "victim" also includes any person who was the intended recipient or addressee of the undelivered mail.  *Id.* § 2B1.1 cmt. n.4(C)(i).

Besides these general rules, the commentary to § 2B1.1 also contains a "special rule" for determining the number of victims in offenses involving the theft of undelivered United States mail. *Id.* § 2B1.1, cmt. n.4(C)(ii). The special rule has two subsections. First, when the offense involves "[a] United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart," the offense "shall be considered to have involved at least 10 victims." *Id.* Second, when the offense involves "[a] housing unit cluster box or any similar receptacle that contains multiple mailboxes," the offense "shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle." *Id.*

The Sentencing Commission cited three reasons for promulgating the special rule: (1) the unique proof problems often attendant to offenses involving undelivered mail; (2) the frequently significant, but difficult to quantify, non-monetary losses in such offenses; and (3) the importance of maintaining the integrity of the United States mail. U.S.S.G. App. C, Amendment 617 (Reasons for Amendment).

Here, the district court applied the special rule because Tejas took undelivered mail from a postal delivery vehicle. Under the special rule, Tejas's offense "shall be considered to have involved at least 10 victims." The application of the special rule triggered a two-level enhancement for an offense involving "10

6

or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i). There is no dispute that the district court properly followed the commentary.

But we conclude that application of the commentary's special rule in this case is inconsistent with the plain text of the number-of-victims enhancement, and is thus not authoritative. *See Fulford*, 662 F.3d at 1177. As the district court recognized, the evidence in this case was clear that Tejas came into contact with a single piece of undelivered mail—the package he took from the front seat of the delivery vehicle. So the offense involved at most two victims—the mail carrier and the addressee on the package (assuming the addressee was not in fact Tejas). Because the evidence and the court's own findings are clear that the offense involved fewer than ten victims, such that § 2B1.1(b)(2)(A)(i) by its own terms does not apply, application of the special rule's mandate of ten victims is inconsistent with the plain text of the guideline. *See id.* We recognize that application of the special rule may be reasonable in cases where there is any doubt as to the number of victims involved in the offense. But the rule can produce erroneous and contrary results when the number of victims is readily determined, as it is here. *Id.*

The government argues that application of the special rule is appropriate because it is consistent with the Sentencing Commission's goal of protecting the integrity of the United States mail. But despite the importance of this goal, it

cannot trump the plain text of the guideline, which is based solely on the number of victims. *See* U.S.S.G. § 2B1.1(b)(2). Accordingly, we vacate and remand for resentencing without application of this enhancement.

**B.**

Next, Tejas argues that the district court erred in applying a two-level enhancement for theft "from the person of another" under U.S.S.G. § 2B1.1(b)(3). We disagree.

The Guidelines provide for a two-level enhancement if the offense involved theft from a person of another. U.S.S.G. § 2B1.1(b)(3). The commentary defines "theft from the person of another" as "theft, without the use of force, of property that was being held by another person or was within arms' reach." *Id.* § 2B1.1 cmt. n.1. "Examples include pick-pocketing and non-forcible purse-snatching, such as the theft of a purse from a shopping cart." *Id.* The commentary also explains that the enhancement for "theft from the person of another" is designed to account for "the risk of physical injury." *Id.* cmt. background.

Here, the district court did not clearly err in applying the § 2B1.1(b)(3) enhancement. The mail carrier testified that she placed the package in the front area of the delivery vehicle after deciding she would not give it to Tejas. Tejas then pushed her aside to get the package while she was standing outside of the van. These facts indicate that Tejas took the package from a place that was still

accessible to her from her position by the door to the van.  In other words, the package was within arms' reach when the theft occurred.  U.S.S.G. § 2B1.1(b)(3), cmt. n.1.  The risk of physical injury in these circumstances was no less than if the mail carrier was simply holding the package in her hands.  Although the district court mistakenly recollected that the door to the van was open, we do not find that fact to be determinative under the circumstances.[2]  Accordingly, we affirm.

## C.

Tejas also contends that the district court erred in applying an enhancement under U.S.S.G. § 3A1.2 for targeting a government officer or employee.  He asserts that he was not motivated by the status of the mail carrier and that the enhancement is reserved for cases of assault, of which he was acquitted by the jury.[3]

---

[2] The fact that the door was closed does not make this situation equivalent to that in *United States v. Jankowski*, 194 F.3d 878 (8th Cir. 1999).  In that case, the Eighth Circuit found that a theft from the back of an armored truck was not "from the person of another" because the "person" was in the driver's seat and was separated from the theft "by a bulkhead with a plexiglass window."  *Id.* at 885–86.  The facts of *Jankowski* show a far greater degree of separation between the person and the theft than is present in this case, where Tejas essentially had to go through the mail carrier in order to retrieve the package.

[3] Tejas also makes a few conclusory assertions that the district court's application of § 3A1.2 constituted impermissible double counting in conjunction with the other enhancements.  But he does not cite any relevant authority or develop any arguments in support of that contention.  So we conclude that he has abandoned this issue.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

The Guidelines provide for a three-level enhancement if (1) the victim of the offense was a government officer or employee, and (2) the offense was motivated by such status. U.S.S.G. § 3A1.2. The commentary explains that "motivated by such status" means that the offense was motivated by the fact that the victim was a government officer or employee. *Id.* § 3A1.2 cmt. n.3. The commentary clarifies that the enhancement would not apply when, for example, both the defendant and the victim were employed by the same government agency, and the offense was motivated by a personal dispute. *Id.*

In *Bailey*, we considered whether the defendant's offense was motivated by the victim's government status. *See United States v. Bailey*, 961 F.2d 180, 181–83 (11th Cir. 1992). The defendant in that case robbed a postal employee at gunpoint. *Id.* at 182. The defendant demanded money orders from the employee, forced her into the back room, and used tape to bind her hand, feet, and mouth. *Id.* We noted that, while the defendant did not rob the employee of her personal belongings, she was targeted for the robbery because, as a postal employee, she was in possession of money orders and a money order validation machine. *Id.* We affirmed the district court's application of the § 3A1.2 enhancement because the defendant was fully aware of the victim's official status and because the assault was motivated by that knowledge. *Id.* at 182.

10

Here, the district court found that the facts of this case were close enough to those in *Bailey* to make application of the § 3A1.2 enhancement appropriate. Tejas does not attempt to distinguish *Bailey* on appeal. And we are not convinced that Tejas's theft is sufficiently distinguishable from Bailey's robbery to make the district court's application of § 3A1.2 clearly erroneous. *See id.* at 183 (holding that the district court's enhancement of the defendant's sentence under § 3A1.2 was not clearly erroneous). Accordingly, we affirm the application of § 3A1.2.

**D.**

Finally, Tejas argues that the district court erred in refusing to apply a two-level reduction for acceptance of responsibility. We review a district court's denial of an acceptance-of-responsibility adjustment under § 3E1.1 for clear error. *United States v. Moriarty*, 429 F.3d 1012, 1022 (11th Cir. 2005). The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and this determination is entitled to great deference on review. *Id.* We will not set aside a district court's determination that a defendant is not entitled to a § 3E1.1 adjustment unless the facts in the record clearly establish that the defendant accepted responsibility. *Id.* at 1022–23.

The Guidelines provide for a two-level reduction in a defendant's offense level if the defendant clearly demonstrates acceptance of responsibility for his offense. U.S.S.G. § 3E1.1(a). Ordinarily, the adjustment does not apply when a

11

defendant puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and remorse. *Id.* § 3E1.1 cmt. n.2. In rare situations, a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. *Id.*

In determining whether a defendant qualifies for the reduction, a court considers whether the defendant truthfully admitted the conduct supporting the offense, and whether the defendant truthfully admitted or did not falsely deny any additional relevant conduct. *Id.* § 3E1.1 cmt. n.1. While a defendant may remain silent with respect to relevant conduct beyond the offense of conviction, a defendant who falsely denies relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. *Id.* In this vein, we have affirmed a district court's denial of acceptance of responsibility when the defendant downplayed his culpability at sentencing and frivolously contested relevant conduct. *United States v. Sammour*, 816 F.3d 1328, 1341 (11th Cir.), *cert. denied*, 137 S. Ct. 177 (2016).

Here, the district court did not clearly err in denying an acceptance-of-responsibility adjustment. The court determined by a preponderance of the evidence that Tejas pushed the mail carrier, despite the fact that he was acquitted of that conduct at trial. The government has a lower burden of proof in proving

the applicability guidelines enhancements than it has in trying a case. And the district judge, who sat through the trial, was in a better position than we are to make credibility determinations.

While Tejas was not required to admit that he pushed the mail carrier, in order to clearly accept responsibility, Tejas went beyond mere silence as to this issue and continued to insist that he had not pushed her. In light of that affirmative denial of relevant conduct, we cannot say that the district court clearly erred in denying an adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 cmt. n.1.

## III.

In sum, and for the reasons stated, we vacate the application of the enhancement for number of victims, under U.S.S.G. § 2B1.1(b)(2)(A)(i), and we remand for resentencing without this enhancement. We affirm the district court in all other respects.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**