[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17306
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20307-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REINALDO ARTEAGA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 15, 2017)

Before WILSON, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Reinaldo Arteaga appeals his concurrent 36-month sentences for conspiracy to commit food stamp fraud, 18 U.S.C. § 371, and wire fraud, 18 U.S.C. § 1343. On appeal, Arteaga argues for the first time that the district court erred when it based a Sentencing Guidelines enhancement on the amount he attempted to redeem in food stamps, $1,512,098, instead of the amount he successfully redeemed, $1,216,872. U.S.S.G. § 2B1.1(b). He also argues that the district court issued an unreasonable sentence by failing to adequately consider the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.

Because we find that the district court did not err in calculating the guideline range and issued a reasonable sentence, we affirm.

## I.

The Food and Nutrition Service authorized Arteaga to participate in the Supplemental Nutrition Assistance Program (SNAP), a food stamp program, through his produce stand at the Opa Locka Flea Market.[1] Through SNAP, eligible households are issued food stamps, backed by the Treasury of the United States, that can be used to purchase food at participating stores, such as Arteaga's. 7 U.S.C. § 2013. But from August 2014 through May 2016, it was Arteaga, not his customers, who was feeding off SNAP. Arteaga traded cash for food stamps at a

---

[1] The purpose of SNAP is to "alleviate . . . hunger and malnutrition . . . [and] permit low-income households to obtain a more nutritious diet through normal channels of trade." 7 U.S.C. § 2011.

2

discounted rate, used the stamps on sham transactions at his store, and pocketed a 20% profit.  During this run, Arteaga attempted to redeem approximately $1,512,098 in food stamps; the government paid him $1,216,872.

A grand jury indicted Arteaga for conspiracy to commit food stamp fraud, 18 U.S.C. § 371, Food Stamp / Electronic Benefit Transfer Card transaction fraud, 7 U.S.C. § 2024(b)(1), and wire fraud, 18 U.S.C. § 1343.  Arteaga pled guilty to the conspiracy and wire fraud charges and the government agreed to dismiss the transaction fraud counts at sentencing.  At the sentencing hearing, the district court determined that Arteaga's conduct had an intended loss of $1,512,098 and an actual loss of $1,216,872; consequently, the district court applied a 16-level enhancement to Arteaga's sentence pursuant to Guidelines Section 2B1.1(b).  After granting Arteaga a downward variance, the court sentenced him below his 41 to 51 months guideline range to 36 months' imprisonment and ordered him to pay $1,216,872 in restitution.

## II.

We review the district court's loss-amount determination for clear error, *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999), and review de novo the interpretation and application of the Guidelines, *United States v. Tejas*, 868 F.3d 1242, 1244 (11th Cir. 2017) (per curiam).  When a party raises a new

argument on appeal which it failed to present to the district court, we review for plain error. *United States v. Rodriquez*, 398 F.3d 1291, 1298 (11th Cir. 2005).

We review the reasonableness of a sentence for abuse of discretion. *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). We will vacate a sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (internal quotation marks omitted).

### III.

Arteaga argues for the first time on appeal that the district court should have used the amount he successfully redeemed, $1,216,872, in determining the loss amount under Section 2B1.1(b), because that number is "concrete and does not require speculation," and because the government misstated the numbers at the sentencing hearing. A $1,216,872 loss, Arteaga claims, is more reflective of his

4

personal culpability, especially since he served as "somewhat of a Robin Hood," liberating SNAP beneficiaries from the strictures of their food stamps.

When a defendant is convicted of fraud, the Guidelines add level enhancements based upon the amount of loss caused by the offense. Thus, a fraud scheme that causes between $550,000 and $1,500,000 in loss leads to a 14-level enhancement, whereas fraud resulting in a loss over $1,500,000 up to $3,500,000 merits a 16-level enhancement. U.S.S.G. § 2B1.1(b). Under Section 2B1.1(b), "loss" equals the greater of the actual loss or the intended loss, where "actual loss" means "the reasonably foreseeable pecuniary harm that resulted from the offense" and "intended loss" means "pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1 cmt. n.3(A)(i)–(ii). If the case involves government benefits, like food stamps, the loss amount shall not be "less than the value of the benefits obtained by unintended recipients or diverted to unintended uses." *Id.* cmt. n.3(F)(ii).

Here, the district court correctly applied a 16-level enhancement upon concluding that the intended loss was $1,512,098—the amount Arteaga purposely attempted to redeem in food stamps. Arteaga admitted to this figure, both because he failed to object to it in the presentence investigation report (PSI), and because he utilized the number in his motion for a downward variance and in his arguments at the sentencing hearing. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th

Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

Arteaga's new argument—that the intended loss is commensurate with the amount actually received—conflicts with the Guidelines definition of intended loss, which is "pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii).  Surely when Arteaga attempted to redeem $1,512,098 in food stamp benefits from the government, he did not purposely seek to only get paid $1,216,872.  We are in agreement with the district court when it sensibly concluded that "the intended loss . . . is the total amount. . . . [N]one of the money went towards the intended purposes of this program."  Indeed, this conclusion comports with the Guidelines requirement for food stamp fraud that the loss amount be no less than "the value of the benefits . . . diverted to unintended uses."  U.S.S.G. § 2B1.1 cmt. n.3(F)(iii).  That value was $1,512,098, which the district court correctly determined requires a 16-level enhancement under the Guidelines.

Arteaga's Robin Hood argument is unpersuasive.  Unlike Robin Hood, who stole from the rich to give to the poor, Arteaga got rich off the poor while defrauding the giver.

IV.

6

Next, Arteaga argues that the court "failed to fully consider the nature and circumstances of the offense and his history and characteristics, as well as the criteria set forth in § 3553(a)(2)." He argues, for example, that the court did not recognize Arteaga's "unusual degree of honestly [sic] and responsibility" in facing his charges, because "it would have been easy for him to stay in Mexico or disappear anywhere in Central or South America." He also contends that the court failed to consider his family situation and the fact that he had never been to prison.

Here, the district court properly considered the Section 3553(a) factors, including the circumstances of the offense, Arteaga's criminal history, and his family situation, when it sentenced him below the guideline range. Contrary to Arteaga's assertion on appeal, the district court explicitly referenced his "personal and family circumstances" when it granted him a downward variance. Arteaga provides us with no evidence that the district court failed to consider a factor due significant weight or that it committed a clear error in judgment. *Irey*, 612 F.3d at 1189. The district court gave due consideration to the Section 3553(a) factors and issued Arteaga a sentence well within "the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (internal quotation marks omitted).

### V.

The district court properly calculated the guideline range and issued a reasonable sentence. Accordingly, the judgment of the district court is affirmed.

7

**AFFIRMED.**

MARTIN, Circuit Judge, concurring:

I concur in the result reached by the majority.