[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14219
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00018-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVIE CAVAZOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 1, 2019)

Before WILLIAM PRYOR, GRANT, and ANDERSON Circuit Judges.

PER CURIAM:

After pleading guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), Stevie Cavazos was sentenced to 120 months in prison and 3 years of supervised release.  He now appeals his sentence on four grounds: (1) that his Florida robbery conviction does not count as a "crime of violence" that can be used to enhance his base-offense level under U.S.S.G. § 2K2.1 and 4B1.2; (2) that the district court clearly erred by rejecting a reduction under § 3E1.1; (3) that the district court erred by granting a four-level enhancement under § 2K2.1(b)(4)(B); and (4) that his sentence was substantively unreasonable.  We address each in turn.

## I.

Cavazos first argues that his state court conviction in Florida for robbery does not count as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A) and § 4B1.2.  We review de novo whether a conviction qualifies as a "crime of violence" under the sentencing guidelines.  United States v. Dixon, 874 F.3d 678, 680 (11th Cir. 2017).  We held in United States v. Lockley that a conviction under Florida's robbery statute, Fla. Stat. § 812.13(1), qualifies as a crime of violence under both the "elements clause" of § 4B1.1(a) and under the list of enumerated offenses in the commentary of the Guidelines.  632 F.3d 1238, 1244–45 (11th Cir. 2011).  Additionally, the Supreme Court recently held in Stokeling v. United States, 139 S. Ct. 544, 555 (2019), that Florida robbery qualifies as a violent felony

2

under the Armed Career Criminal Act's elements clause.  We have previously noted that the definition of "violent felony" under the ACCA is "virtually identical" to the definition of "crime of violence" under the Sentencing Guidelines. United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).  In other words, it is settled law in our circuit that a Florida robbery conviction qualifies as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A) and § 4B1.2.  The district court, therefore, properly counted it as such in determining Cavazos's base offense level. Cavazos acknowledges the law in this regard but contends that the cases establishing it were wrongly decided.

We need not reach the merits of Cavazos's arguments to affirm here.  Both our precedent and the Supreme Court's precedent are binding on us.  Even if we were convinced that the panel in Lockley reached an incorrect decision, our prior precedent rule provides that we cannot overrule it.  United States v. Steele, 147 F.3d 1316, 1317–18 (11th Cir. 1998).  And, of course, "only [the Supreme Court] may overrule one of its precedents."  Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535 (1983).

## II.

Next, Cavazos argues that the district court erred by failing to apply a two-level adjustment for his acceptance of responsibility under U.S.S.G. § 3E1.1.  We review the district court's denial of an acceptance-of-responsibility reduction for

3

clear error.  United States v. Tejas, 868 F.3d 1242, 1247 (11th Cir. 2017).  We will only reverse the district court's factual finding relating to acceptance of responsibility where, although there is evidence to support the finding, we are left with the "definite and firm conviction that a mistake has been committed."  United States v. Barrington, 648 F.3d 1178, 1195 (11th Cir. 2011) (quotation omitted).  We note that the district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and we will not set aside such a determination unless the facts in the record clearly establish that the defendant has accepted responsibility, which the defendant has the burden of proving.  United States v. Moriarty, 429 F.3d 1012, 1022-23 (11th Cir. 2005).

The reduction under § 3E1.1(a) is appropriate when the defendant "clearly demonstrates acceptance of responsibility for his offense."  The comments to the Guidelines provide a non-exhaustive list of factors for the district court to consider. Id. cmt. n.1(A).  Though pleading guilty prior to the beginning of trial, combined with truthfully admitting the conduct at issue, generally constitutes "significant evidence of acceptance of responsibility," that evidence may be outweighed "by conduct of the defendant that is inconsistent with such acceptance of responsibility."  Id. cmt. n.3.

Here, the balance is clearly in favor of denying the reduction.  Though Cavazos's guilty plea saved the Government the time and expense of a trial, he is

4

not entitled to a reduction simply for pleading guilty—especially where his surrounding conduct is inconsistent with full acceptance.  Id.  Prior to pleading guilty, Cavazos illegally removed his GPS monitoring device and absconded for two months while on pretrial services.  Additionally, when he returned to custody, he tested positive for marijuana.  These actions led the district court to impose an enhancement under § 3C1.1 for obstruction of justice, to which Cavazos did not object.

The § 3C1.1 enhancement makes the argument for a reduction under § 3E1.1(a) that much weaker.  The Guidelines note that when obstruction of justice enhancement applies, a reduction for acceptance of responsibility should only occur in "extraordinary cases."  Id. cmt. n.4.  Cavazos presents no compelling argument for why his is such an "extraordinary case."  He merely argues that his guilty plea, combined with his lack of objection to the obstruction enhancement, is sufficient.  In other words, he wishes us to hold that post-arrest, pre-plea conduct that triggers the obstruction enhancement can be cured by simply pleading guilty.  We decline to do so.  Creating such an exception would entirely swallow the rule regarding the interaction of § 3C1.1 and § 3E1.1(a).  Accordingly, we hold that the district court did not clearly err in denying the reduction under § 3E1.1(a) and affirm here.

III.

5

Cavazos's third argument is that the district court erred in applying an enhancement under § 2K2.1(b)(6)(B).  The Sentencing Guidelines provide for a four-level enhancement if the defendant used or possessed a firearm or ammunition "in connection with another felony offense."  The enhancement applies if the firearm "facilitated, or had the potential of facilitating, another felony offense," § 2K2.1 cmt. n.14(A), but not if "its presence or involvement [was] the result of accident or coincidence."  Smith v.  United States, 508 U.S. 223, 238 (1993).  "Another felony offense" is defined as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  Id. cmt. n. 14(C).

In the context of a sentencing hearing, we require the Government to demonstrate that a preponderance of the evidence justifies the enhancement.  United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013).  Additionally, we have held that the district court may consider any information, including reliable hearsay, provided that there are sufficient indicia of reliability to support its accuracy.  United States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995).  We review the district court's application of an enhancement under § 2K2.1(b)(6)(B) for clear error.  See United States v. Whitfield, 50 F.3d 947, 949, 949 n.8 (11th Cir. 1995).

Prior to the sentencing hearing, the probation officer submitted a Presentence Investigative Report ("PSR") detailing the events at issue. And during the sentencing hearing, the Government called Sheriff's Deputy Grant Bly to testify. Bly testified that he had responded to a 911 call on September 13, 2017, placed by two residents of Wimauma, Florida. Bly arrived at the residence shortly thereafter, where several other deputies were already on the scene. The individuals informed Bly and the other deputies that Cavazos had snuck under their fence and entered onto their property, and that they had told him to leave. In response, Cavazos raised a sawed-off shotgun that he was carrying, and pointed it at them. He left after they threatened to call the police, which they then did. Bly testified that the narrative provided by the individuals at the scene was consistent with what they told the 911 operator when they placed the call.

The on-scene interview was interrupted by the sound of "loud screaming" and "two to three gunshots" coming from the direction of Cavazos's house. Several of the deputies immediately proceeded in that direction, and observed a man, later identified as Cavazos's father, bleeding from the head in the front yard. The deputies were worried that Cavazos had been the one who injured his father and that he might still be on the property, so they called for assistance from their helicopter aviation and K-9 units. Upon arrival, the helicopter reported that an individual was lying in Cavazos's backyard; the deputies entered the backyard and

7

discovered Cavazos lying on top of two weapons, including the sawed-off shotgun that he pointed at the 911 callers. Cavazos objected to the PSR's description of the conduct, specifically denying "pointing a firearm at the two individuals" who placed the 911 call. During the hearing, Cavazos objected to Bly's testimony and the admission of a transcript of the 911 call and the written statements of the callers. The district court preliminarily denied the objections, but reserved the right to sustain them later after hearing all of the evidence. It later denied the objections again and applied the enhancement. The court noted that the evidentiary standards of a sentencing hearing were more relaxed than they would be at trial, but nonetheless noted that the 911 transcript was permissibly used to refresh Deputy Bly's recollection and that the written statements were admissible either as present-sense impressions or as excited utterances.

On appeal, Cavazos argues that the district court applied the enhancement based on unreliable evidence and erred in doing so. He specifically argues that Bly's testimony was not reliable, that the transcript of the 911 call lacked foundation and was not properly authenticated, and that he should have been able to cross-examine the 911 callers and the 911 operator. These arguments fail.

We address the first two issues of reliability in tandem. First, Bly's testimony was reliable, and the district court's decision to treat it as such was well-founded—he was a responding officer at the scene and observed most of the events

8

that took place.  We are not presented with any reason to find his testimony unreliable.  Cavazos's argument to the contrary is more conclusory than it is grounded in a factual basis.  Second, as for the transcript of the 911 call, even if we agreed with Cavazos's argument that it lacked sufficient indicia of reliability, it played only a minor role, if any role at all, in the district court's ultimate decision. We find no error here.

Third, Cavazos's argument that he should have had the ability to cross-examine the callers and the 911 operators is misplaced.  The right to confrontation is a trial right, "not a sentencing right."  United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005).  Even if it were applicable here, the Confrontation Clause only protects against the introduction of testimonial statements, and 911 calls placed to "describe current circumstances requiring police assistance" are nontestimonial.  Davis v. Washington, 547 U.S. 813, 827 (2006).  Accordingly, we affirm on this ground.

## IV.

Finally, Cavazos argues that his sentence was procedurally and substantively unreasonable.  Cavazos's arguments regarding procedural unconscionability relate to his previous arguments, which we rejected previously, and we do not see the need to revisit them.

Regarding substantive unconscionability, we will reverse the district court's sentence only if left with the "definite and firm conviction that the district court committed a clear error of judgment" in weighing the relevant factors under 18 U.S.C. § 3553(a) and determining a sentence.  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).  The district court must impose a sentence sufficient, but no greater than necessary, to comply with the purposes of § 3553(a)(2), which include the need for adequate deterrence; protecting the public from the defendant's future criminal conduct; and providing the defendant with educational or vocational training, medical care, or other correctional treatment. The district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, and the pertinent policy statements of the Sentencing Commission.  18 U.S.C. §§ 3553(a)(1), (4) (5).  The district court need not explicitly state that it has considered each § 3553(a) factor.  United States v. Flores, 572 F.3d 1254, 1270 (11th Cir. 2009).  We review here for clear error. United States v. Ramirez-Gonzalez, 755 F.3d 1267, 1273 (11th Cir. 2014).

Cavazos argues that his 120-month sentence, the statutory maximum, was unreasonable because he pleaded guilty to the offense, accepted responsibility for his actions, and had substantial mitigating factors.  But the record indicates that the district court seriously considered these arguments and appropriately weighed the

10

§ 3553(a) factors in arriving at its sentence.  Additionally, given our discussion previously regarding the district court's decision to reject a reduction under § 3E1.1(a), we reject Cavazos's argument that he fully accepted responsibility for his actions.

Ultimately, though his sentence is the statutory maximum, we cannot say that the district court erred in imposing it and Cavazos does not point to any specific error of the court.  His ultimate sentence is below what the Guidelines would have been absent the statutory maximum, and the nature and circumstances of the offense, as well as Cavazos's history and characteristics, support it.  We affirm.

**AFFIRMED.**