[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10906

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARLTON EDWARD CASH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60118-UU-1

_____

Before BRANCH and LUCK, Circuit Judges, and ANTOON,* District Judge.

PER CURIAM:

Carlton Edward Cash appeals the mandatory minimum 120-month sentence imposed after he pleaded guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine and four counts of possession with intent to distribute 5 grams or more of methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 18 U.S.C. § 2. Cash contends that the district court erred in determining that: (1) the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) applied; and (2) he did not establish eligibility for relief from the mandatory minimum under the safety valve provided by 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). After review and with the benefit of oral argument, we affirm.

We review the district court's factual determinations under the Sentencing Guidelines for clear error. *United States v. Carillo-Ayala*, 713 F.3d 82, 87 (11th Cir. 2013). "For a factual finding to be clearly erroneous, we must be left with a definite and firm conviction that the court made a mistake." *United States v. Tejas*, 868 F.3d 1242, 1244 (11th Cir. 2017). "[L]egal interpretation[s] of . . . statutes and sentencing guidelines" are reviewed de novo. *United States v.*

* The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

*Poyato*, 454 F.3d 1295, 1297 (11th Cir. 2006) (quoting *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004)).

We start with the firearm enhancement. Section 2D1.1(b)(1) of the Sentencing Guidelines provides that "[i]f a dangerous weapon (including a firearm) was possessed" during a drug-trafficking crime, the defendant's offense level should be increased by two levels. This enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A). As this Court has previously explained, "[t]he government has the burden under § 2D1.1 to demonstrate the proximity of the firearm to the site of the charged offense by a preponderance of the evidence." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). "If the government is successful, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" *Id.* (quoting *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995)).

On the day of Cash's arrest, federal agents searched his residence and found a loaded handgun and approximately seven grams of methamphetamine in a safe in his upstairs master bathroom. Cash argues that the government did not meet its initial burden because it was "never able to demonstrate [a] 'nexus' between [Cash's] mere possession of the firearm and his drug crimes." That argument is doomed from the start. As this Court has made clear, "[p]roximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)."

*United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021) (quoting *Carillo-Ayala*, 713 F.3d at 91). While Cash is correct that "a drug offender possess[ing] a firearm does not necessarily give rise to the firearms enhancement," one who stores a firearm in the same location as his drugs bears the burden of showing that the two are not connected.

Cash's reliance on *United States v. Stallings* is unavailing. In *Stallings*, Walter Dean Johnson and more than twenty others were convicted for their participation in a vast drug conspiracy. 463 F.3d 1218, 1220 (11th Cir. 2006). Because police found three handguns in Johnson's home, the district court applied the firearm enhancement pursuant to § 2D1.1(b)(1). *Id.* This Court reversed, noting that the application of the firearm enhancement required "some nexus beyond mere possession between the firearms and the drug crime" and holding that the government in that case failed to meet its initial burden because it "provided no evidence connecting the pistols found in Johnson's home to his alleged drug activity." *Id.* at 1221. But the police in that case "found no evidence of drug paraphernalia in Johnson's home," *id.* at 1220, and "no one suggested that any activities related to the conspiracy ever took place" there, *id.* at 1221. Additionally, the government failed to show that the firearms actually belonged to Johnson, rather than one of the other three adults who lived with him. *Id.*

Here, on the other hand, there is no dispute that the handgun belonged to Cash, was stored in proximity to illegal drugs, and was found at the same residence in which Cash engaged in some of

21-10906                Opinion of the Court                5

the charged drug activity. Under these facts, the government satisfied its initial burden, and Cash bore the onus of showing that "a connection between the weapon and the offense was 'clearly improbable.'" *Audain*, 254 F.3d at 1289 (quoting *Hall*, 46 F.3d at 63).

In attempting to meet his burden, Cash points out that no firearm is seen or mentioned in recordings of the charged drug transactions, and that Cash's family explained at sentencing that Cash had owned firearms for years before he began selling drugs and always kept them locked away in safes. These facts, Cash argues, prove that "the presence of the gun in the safe with the methamphetamine was [a] 'coincidence'" and that the firearm enhancement was therefore improper.

We disagree. The fact that Cash did not brandish or discuss a firearm during his drug sales does little to show that the handgun found in his safe was unconnected to the charged activity. As the district court noted during Cash's sentencing hearing, "one of the reasons a drug dealer has guns is for self-defense, because there is, of course, a heightened danger of violence when you sell drugs. You don't know who's coming into your apartment, you don't know who you're going to be dealing with." The fact that Cash may have purchased his firearm before he began selling drugs does not make it "clearly improbable" that he came to rely on it to defend himself and his drug activities—especially when we consider that the gun was found loaded, inches away from drugs packaged for sale, in the same bathroom in which Cash admitted to conducting drug sales in the past. Based on these facts, the district court did

not clearly err in applying the firearm enhancement under § 2D1.1(b)(1).

We turn now to Cash's eligibility for the so-called "safety valve" provided by 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). The safety valve allows for a two-level reduction in a defendant's offense level and directs the court to "impose a sentence . . . without regard to any statutory minimum sentence, if the court finds that the defendant meets the [five] criteria in 18 U.S.C. § 3553(f)(1)–(5)." U.S.S.G. § 5C1.2(a); *see* U.S.S.G. § 2D1.1(b)(18). Among those criteria—and the only one relevant to this appeal—is the requirement that the defendant did not "possess a firearm or other dangerous weapon . . . in connection with the offense," § 3553(f)(2); § 5C1.2(a)(2), which he must establish by a preponderance of the evidence, *Carillo-Ayala*, 713 F.3d at 90. While a defendant who receives a firearm enhancement under § 2D1.1(b)(1) is not automatically precluded from safety-valve relief, he "must show that it is more likely than not that [his] possession of the firearm was not in connection with the offense." *Carrasquillo*, 4 F.4th at 1272.

Cash has failed to meet this burden. In attempting to establish that he did not possess a firearm "in connection with" the charged drug offenses, Cash largely revives his arguments in opposition to the firearm enhancement, pointing to the absence of a visible firearm in the drug-sale recordings and his family's assurance that he lawfully owned firearms for years before he began his drug activities. Although the burden is lower, these arguments still fall short for the same reasons explained above. Put simply, while Cash

has pointed to *some* evidence that might call into question the presence or purpose of his firearm, he has not shown that it is "more likely than not" that a loaded handgun found mere inches from illegal drugs in his bathroom safe was not possessed "in connection with" his drug sales. This is especially true when we consider, as the district court did below, Cash's own insistence that the handgun was for self-defense—a need that increases dramatically for those who store and sell drugs in their homes.

It is true that the only drug sale over 50 grams—and thus the only offense giving rise to the 120-month mandatory minimum—occurred away from Cash's home at a Trader Joe's parking lot. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (mandating that a person who distributes "50 grams or more of methamphetamine . . . shall be sentenced to a term of imprisonment which may not be less than 10 years"). But Cash has done little to enervate the district court's reasonable inference that the gun found in Cash's safe bore a connection to that sale. While Cash points to the lack of evidence that his gun "was ever outside of the safe," the burden of proving eligibility for the safety valve was his alone. *See Carillo-Ayala*, 713 F.3d at 90. In this case, as in most, the absence of evidence is simply not evidence of absence, especially when we consider the other factors linking the gun and the drugs together. Even if Cash did not take the gun with him to the parking lot, the district court did not clearly err in inferring that Cash possessed the gun in part to protect himself and his drug stash and that the gun was thus possessed "in

connection with" the sale of those drugs, whether at home or else-where.[1]

In sum, Cash has failed to show that the district court clearly erred in applying the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) or in determining that he was ineligible for the safety valve provided by 18 U.S.C. 3553(f) and U.S.S.G. § 5C1.2(a).

**AFFIRMED.**

---

[1] Cash goes to great pains to argue that the term "the offense" in 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(a)(2) should be limited to "the offense of conviction" and should not include "all relevant conduct," contrary to the guidelines commentary. *See* § 5C1.2(a) cmt. n.3 ("'Offense,' as used in subsection (a)(2)–(4) . . . mean[s] the offense of conviction and all relevant conduct."). As Cash acknowledges, however, the district court did not "base its denial of safety valve relief on a finding of relevant conduct," nor did it "rely[] on the Sentencing Commission's [broader] definition of 'offense.'" Rather, the court looked to the circumstantial evidence presented by the Government, including the discovery of drugs and a loaded firearm in Cash's safe, and determined that Cash had not demonstrated by a preponderance of the evidence that the gun was not used in connection with his drug sales—including the sale that took place at Trader Joe's. Because this determination would stand under either interpretation of "the offense," we need not address that issue.