[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-10192

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CENTRY CORKER, JR.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cr-00031-AW-MAF-1

————————————————

Before NEWSOM, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Centry Corker, Jr. appeals his sentence of 45 months' imprisonment for aiding and abetting bank fraud, possession of 15 or more unauthorized access devices with intent to defraud, and aiding and abetting aggravated identity theft. Corker argues that the District Court plainly erred at sentencing in calculating the loss attributable to him pursuant to the $500-per-access-device rule in Application Note 3(F)(i) to U.S.S.G. § 2B1.1, and by applying Application Note 3(A), which requires the district court to calculate loss as the greater of actual or intended loss. He asserts that these provisions are inconsistent with the plain meaning of the word "loss" in the Guidelines' text and invalid pursuant to the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). We affirm the District Court's decision.

## I.

In December 2015, Corker obtained a $2,500 personal loan check from the United States Automobile Association Federal Savings Bank (the "USAA FSB") by calling the bank from a Maryland phone number and posing as an individual named W.C. Corker also called the United States Automobile Association Savings Bank (the "USAA SB") posing as W.C. and obtained a credit card with a $20,000 limit in W.C.'s name using his name, date of birth, and Social Security number. The loan check was sent to Corker's

22-10192                Opinion of the Court                3

residence via Federal Express on December 3, 2015, and the credit card was sent to Corker's residence via Federal Express on December 5, 2015.  The loan was stopped before Corker could cash the check, but Corker used the credit card to make purchases totaling $2,778.01 at Walmart stores in Tallahassee and Pembroke Pines, Florida.

Between September 30, 2015, and January 30, 2016, Corker had engaged in a separate credit card fraud scheme.  During this time, Corker had obtained multiple blank credit cards.  Using The Onion Router software,[1] Corker went to dark web marketplaces such as AlphaBay and BriansClub to purchase credit card information stolen from other individuals.  Through his purchases, he obtained 78 individuals' credit card numbers, expiration dates, card verification values, and personally identifiable information, and Corker stored this information on his personal laptop.  He then used a magnetic stripe card reader and writer to encode the card numbers he received and copy the individuals' card information onto the blank credit cards.  He intended to use the credit cards to make purchases not authorized by the original card owners, but he did not get to use the credit cards.

---

[1] The Onion Router ("TOR") software allows users to access the dark web, and it protects users' privacy by encrypting users' web traffic and clearing their browser history automatically after each browsing session.  *See* Theodor Porutiu, *What Is the TOR Browser? A Guide to the Dark Web Browser*, VPN Overview (June 27, 2022), https://vpnoverview.com/privacy/anonymous-browsing/tor/.

Corker was indicted by the United States District Court for the Northern District of Florida on July 7, 2020.  For Counts 1 through 6, Corker was charged with attempting to defraud USAA[2] by using a false name to get a loan from USAA FSB and a credit card from USAA SB, and by making purchases using the fraudulently obtained credit card, in violation of 18 U.S.C. §§ 2 and 1344(2).  Count 7 charged Corker with possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(3) and (c)(1)(A)(i).  The term "access devices" here refers to the 78 victims' names, credit card numbers, card verification values, and card expiration dates that were stored on Corker's personal laptop.  Finally, for Counts 8 and 9, Corker was charged with unlawfully using the identity of another person to commit bank fraud as set out in Counts 1 and 2, in violation of 18 U.S.C. §§ 2 and 1028A(a)(1).  Pursuant to a plea agreement, Corker pled guilty to Counts 2, 7, and 9 on October 12, 2021.  The Government agreed to drop the remaining charges against Corker as part of the plea agreement.

A probation officer prepared Corker's presentencing report ("PSR") on December 1, 2021, and revised it on December 17, 2021.  The probation officer calculated USAA's actual loss to be $5,278.01, and the officer calculated a total intended loss value of $61,000—$38,500 for the 78 victims (including W.C.) whose private credit card information was on Corker's computer and $22,500 for USAA.

[2] Throughout the record, the Government and the District Court collectively refer to USAA FSB and USAA SB as "USAA."

For the 78 individuals who had their credit card information stolen, the probation officer calculated an intended loss amount of $500 per card, but the officer subtracted the $500 intended loss for W.C.'s card because W.C. suffered an actual loss when Corker obtained the credit card in W.C.'s name and made purchases totaling $2,778.01. The loss value of $500 per card was calculated pursuant to Application Note 3(F)(i) to U.S.S.G. § 2B1.1, which states that, in a case involving unauthorized access devices, "loss includes any unauthorized charges made with the . . . unauthorized access device and shall be not less than $500 per access device." United States Sentencing Commission, *Guidelines Manual*, § 2B1.1, comment. (n.3(F)(i)) (Nov. 1, 1989). USAA's intended loss value came from the loan and credit card that Corker obtained fraudulently—$2,500 for the USAA FSB loan and $20,000 for the USAA SB credit card obtained in W.C.'s name.

The probation officer calculated a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1). The probation officer applied the following adjustments for specific offense characteristics: (1) a 6-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(D) because the amount of loss was more than $40,000 but less than $95,000; (2) a 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved 10 or more victims; and (3) a 2-level increase pursuant to U.S.S.G. § 2B1.1(b)(11)(A)(i) because the offense involved the possession or use of device-making equipment. The officer also applied a 3-level reduction for acceptance of responsibility and timely assistance to authorities pursuant to U.S.S.G. § 3E1.1(a) and

(b), yielding a total offense level of 14. Based on Corker's four criminal history points, he had a criminal history category of III, resulting in a Guidelines sentencing range of 21 to 27 months' imprisonment for Counts 2 and 7, to be followed by a mandatory consecutive two-year prison sentence for Count 9.[3]

Corker's sentencing hearing took place before the District Court on January 3, 2022. The Court reviewed the guidelines sentence range and asked Corker if he objected to the guidelines range or anything else in the PSR. Corker replied that he did not object to the guidelines sentence range or the PSR. After hearing from the parties regarding the conditions of Corker's supervised release and the 18 U.S.C. § 3553(a) sentencing factors, the Court sentenced Corker to 45 months' imprisonment, $5,278.01 in restitution, and five years of supervised release. Immediately after imposing the sentence, the Court asked Corker if he had any objections to the sentence or the manner in which it was to be imposed, and Corker again replied that he did not have any objections.

---

[3] 18 U.S.C. § 1028A(a)(1) provides that anyone who, during the commission of a felony violation contained in Chapter 47 of Title 18 of the U.S. Code, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Corker committed a felony violation contained in Chapter 47 of Title 18 of the U.S. Code by possessing 78 unauthorized access devices. *See* 18 U.S.C. §§ 1029(a)(3), 1029(c)(1)(A)(i).

## II.

Corker now appeals his sentence before this Court. He argues that the District Court erred in calculating the loss amount attributable to him pursuant to Application Note 3(F)(i) to U.S.S.G. § 2B1.1. According to Corker, Application Note 3(F)(i)'s requirement that courts assess a minimum loss of $500 per access device is invalid because it conflicts with the plain meaning of the word "loss" in the Guidelines' text. U.S.S.G. § 2B1.1 states that for fraud offenses, the offense level should be increased according to the provided table "if the loss exceeded $6,500." Corker argues that the commonly understood meaning of "loss" is "the amount of something lost," so "loss" as used in the Sentencing Guidelines refers to the dollar amount that the victim actually lost as a result of the offense. Corker concedes that he is liable for the $5,278.01 that USAA *actually* lost, but he contends that he cannot be liable for the $61,000 in *intended* losses because the Sentencing Guidelines only call for sentences to be enhanced based on actual loss.

Corker also asserts that Application Note 3(F)(i) is invalid under *Kisor v. Wilkie*. The Supreme Court held in *Kisor* that a court should only defer to an agency's own interpretation of a regulation if "a regulation is genuinely ambiguous . . . even after a court has resorted to all the standard tools of interpretation." 139 S. Ct. at 2414. Corker argues that *Kisor* abrogates the rule that the

Guidelines' commentary[4] should be afforded significant deference—a rule that this Court has followed in the past. *See United States v. Lange*, 862 F.3d 1290, 1294 (11th Cir. 2017). Application Note 3(F)(i), Corker argues, is not a reasonable interpretation of a "genuinely ambiguous" Guideline, as the $500-per-device assessment is "wholly unrelated" to the victim's actual loss and "is inconsistent with the unambiguous text of the [G]uideline."

We review a sentencing challenge raised for the first time on appeal for plain error. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001). Plain error lies only where "(1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* If an issue is not resolved directly by the language of a statute or rule, Eleventh Circuit precedent, or Supreme Court precedent, there can be no plain error. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). "Such error must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in

---

[4] Although *Kisor* does not explicitly extend its holding to the U.S. Sentencing Guidelines, the Supreme Court has stated that "the guidelines are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45, 113 S. Ct. 1913, 1919 (1993).

detecting it." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (quotations omitted).

Section 2B1.1 of the U.S. Sentencing Guidelines contains the offense level calculation for theft and fraud offenses. U.S.S.G. § 2B1.1. Section 2B1.1(b)(1)(D) provides for an offense level increase of 6 levels if the loss caused by the relevant offense exceeds $40,000 but is less than $95,000. *Id.* § 2B1.1(b)(1)(D). This section itself does not provide a definition of "loss." *Id.* Application Note 3(F)(i) to § 2B1.1 provides a "Special Rule" for cases involving counterfeit credit cards or access devices. Pursuant to the "Special Rule," "loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device." *Id.* § 2B1.1, cmt. n.3(F)(i). Application Note 3(A) to § 2B1.1 directs courts to calculate loss as "the greater of actual loss or intended loss." *Id.*, cmt. n.3(A).

In *Stinson v. United States*, the Supreme Court held that the commentary to the Guidelines is authoritative unless it: (1) violates the Constitution; (2) violates a federal statute; or (3) is inconsistent with, or a plainly erroneous reading of, a given Guideline. 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993). Applying this test, the Court held that the definition of "crime of violence" in the commentary to U.S.S.G. §§ 4B1.1 and 4B1.2 was authoritative because it did not violate the Constitution or a federal statute and was consistent with the Guidelines. *Id.* at 47, 113 S. Ct. at 1920.

In *Kisor*, the Supreme Court clarified when courts should defer to agency interpretations of ambiguous regulations. 139 S.

Ct. at 2408. The Court held that such deference is warranted only when a court has determined, "based on indicia like text, structure, history, and purpose, whether the regulation really has more than one reasonable meaning," and where the interpretation "is of the sort that Congress would want to receive deference." *Id.* at 2424. Although the United States Sentencing Commission is not an executive agency, Congress permissibly delegates authority to the Sentencing Commission to issue Guidelines in the same way it delegates authority to executive agencies. *See Mistretta v. United States*, 488 U.S. 361, 371, 374–80, 109 S. Ct. 647, 654, 656–59 (1989).

We have reversed district courts' applications of "special rules" from Application Notes when they contradict the Guidelines. For example, in *United States v. Tejas*, 868 F.3d 1242, 1245 (11th Cir. 2017), a case involving a defendant who stole undelivered mail from a postal delivery vehicle, the district court applied a "special rule" set out in Application Note 4(C)(i) to § 2B1.1 for determining the number of victims in the offense. The rule provided that, when a mail-theft offense "involves a United States Postal Service . . . delivery vehicle . . . [the offense] shall be considered to have involved at least 10 victims." *Tejas*, 868 F.3d at 1245 (quoting U.S.S.G. § 2B1.1, comment. (n.4(C)(ii))) (internal quotation marks omitted). Application of the rule triggered a two-level enhancement under § 2B1.1(b)(2)(A)(i) for an offense involving ten or more victims. *Id.* Because the evidence clearly demonstrated that the offense involved fewer than ten victims, however, we held that the special rule's mandate of ten victims was inconsistent with the

plain text of the Guideline, which was based solely on the number of victims. *Id.* We recognized that the special rule might be reasonable in other instances where there may be doubt about the number of victims involved in the offense, but in the instant case it produced "erroneous and contrary results when the number of victims is readily determined, as it is here." *Id.* at 1245–46.

This Court has not previously addressed whether Application Note 3(F)(i) contradicts the text of § 2B1.1 itself. Nevertheless, we have upheld district courts' applications of § 2B1.1(b)(1) and Application Note 3(F)(i) in making fraud-loss calculations without questioning whether the $500-per-device "Special Rule" contradicted the text of the Guidelines. *See, e.g.*, *United States v. Maitre*, 898 F.3d 1151, 1159–61 (11th Cir. 2018); *United States v. Wright*, 862 F.3d 1265, 1274–75 (11th Cir. 2017). We have also explicitly rejected the argument that Application Note 3(A) to § 2B1.1, instructing courts to calculate "the greater of actual loss or intended loss," contradicts the plain meaning of the Guidelines' text. *See* *United States v. Moss*, 34 F.4th 1176, 1190 (11th Cir. 2022) (upholding the application of Application Note 3(A) in a case involving Medicare and Medicaid fraud).

## III.

Corker has not shown that the District Court plainly erred in relying on Application Note 3(F)(i) to calculate the offense's loss amount under § 2B1.1. Regarding Application Note 3(F)(i)'s $500-per-device loss measurement, Corker simply asserts, based on two standard dictionary definitions, that the term "loss" plainly refers

to the monetary value of "something lost." However, Corker identifies no binding Supreme Court or Eleventh Circuit cases that clearly establish that Application Note 3(F)(i)'s $500-per-device loss measurement is inconsistent with the text of § 2B1.1(b)(1), which provides no definition of the term "loss." To the contrary, this Court has repeatedly upheld the application of Application Note 3(F)(i)'s $500-per-device measurement without questioning whether it was contrary to the plain text of § 2B1.1. *See Maitre*, 898 F.3d at 1159–61; *Wright*, 862 F.3d at 1274.[5]

Corker has also failed to show that the District Court committed plain error by relying on Application Note 3(A) to § 2B1.1. This Court has specifically rejected Corker's secondary argument that Application Note 3(A), which instructs courts to calculate loss as "the greater of actual loss or intended loss," contradicts the text of § 2B1.1 itself. *See Moss*, 34 F.4th at 1190. Accordingly, this Court's decision in *Moss* forecloses Corker's argument that the District Court plainly erred in applying Application Note 3(A) to § 2B1.1. *See Clark*, 274 F.3d at 1326.

The decisions from the Supreme Court that Corker cites addressed general issues of when courts should treat the commentary to the Guidelines as authoritative, *Stinson*, 508 U.S. at 38–39, 47,

---

[5] In his brief before this Court, Corker cited a Sixth Circuit case to support the proposition that the $500-per-device measurement is not part of "loss" as used in the Guideline. *See United States v. Ricciardi*, 989 F.3d 476 (6th Cir. 2021). However, the Sixth Circuit case that Corker identifies is not binding precedent that could establish plain error in this Circuit.

113 S. Ct. at 1915–16, 1920, and when agency interpretations of rules are authoritative, *Kisor*, 139 S. Ct. at 2408. This Court recently held that *Kisor* applies to the Sentencing Guidelines, concluding that the Court may not defer to the commentary "if uncertainty does not exist in the Guideline." *United States v. Dupree*, No. 19-13776, slip op. at 12 (11th Cir. Jan. 18, 2023). However, the question of whether *Stinson* and *Kisor* govern how much deference to give to Guidelines commentary is a separate issue from whether binding precedent holds that Application Note 3(A) and Application Note 3(F)(i) are inconsistent with the Guidelines' text—which Corker must show to prove plain error. *Lejarde-Rada*, 319 F.3d at 1291. Corker's assertion that our holding in *Tejas* supports a finding of plain error in this case also fails because *Tejas* involved a different provision from the ones at issue here. *Tejas*, 868 F.3d at 1245 (quoting U.S.S.G. § 2B1.1(b)(2)(A)(i)).

## IV.

Here, the District Court did not plainly err in applying the $500-per-device rule in Application Note 3(F)(i) because no binding precedent clearly establishes that Application Note 3(F)(i) is inconsistent with the Guidelines' text. Further, Corker's argument that the District Court plainly erred in applying Application Note 3(A) is foreclosed by this Court's binding precedent in *Moss*. Finally, the District Court did not plainly err in light of *Kisor*, as *Kisor* does not resolve the specific question presented in this case—whether the District Court's loss calculations directly contravened binding

14                    Opinion of the Court                    22-10192

precedent, as required under the plain-error test.  The District Court's decision is accordingly

**AFFIRMED.**