[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 04, 2001
THOMAS K. KAHN
CLERK

No. 00-16295
Non-Argument Calendar
_____

D.C. Docket No. 00-00079-CR-J-25C

UNITED STATES OF AMERICA,

Plaintiff-Appellant-
Cross-Appellee,

versus

JOSIE CLARK,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court for the
Middle District of Florida

_____

**(December 4, 2001)**

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

The government appeals, and Josie Clark cross-appeals, the district court's

imposition of a 150-month sentence for aircraft piracy, in violation of 49 U.S.C.

§ 46502. Failing to object below, the government now argues for the first time on appeal that the district court erred by imposing a downward departure sentence that was below the statutory minimum term of imprisonment. Clark argues, for the first time on cross-appeal, that she should be allowed to withdraw her guilty plea because the magistrate judge never adequately informed her of the mandatory minimum term of imprisonment, in violation of Fed. R. Crim. P. 11(c)(1).

We review arguments raised for the first time on appeal for plain error. See United States v. Swatzie, 228 F.3d 1278, 1281 (11th Cir. 2000), cert. denied, 121 S. Ct. 2600 (2001). We will find plain error only where (1) there is an error in the district court's determination ; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. See United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996).

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find plain error as to the government's appeal, vacate Clark's sentence and remand for resentencing. We also conclude that the magistrate judge complied with the requirements of Rule 11(c) and accordingly reject Clark's arguments on cross-appeal.

## I.

The relevant facts are straightforward. On April 27, 2000, a grand jury charged Clark and Wendy Calderon with conspiracy to commit aircraft piracy, in violation of 49 U.S.C. § 46502; aircraft piracy, in violation of 49 U.S.C. § 46502; and assault and intimidation of an aircraft crew member with a dangerous weapon, in violation of 49 U.S.C. § 46504, arising out of their scheme to help Clark's husband and Calderon's boyfriend escape from the Union Correctional Institution in Starke, Florida where both men are on death row. Clark and Calderon devised a plan to charter and hijack a helicopter and fly over the Union Correctional Institution prison yard, where they would drop a suitcase containing rifles and bolt cutters into the exercise yard. The two men and their fellow inmates would then use these rifles to shoot prison guards and would use the bolt cutters to facilitate their escape. Clark and Calderon then planned to land the helicopter outside the prison compound, allowing the escaped prisoners to board and escape from the facility. In furtherance of their scheme, Clark and Calderon purchased two SK-47 semi-automatic assault rifles, a folding stock for one of the rifles, rifle ammunition, and bolt cutters. They placed these items into a suitcase padded with pillows. Clark then chartered a helicopter from Whisper Airlines at the Keystone Airport in Florida.

On December 21, 1999, Clark and Calderon boarded the chartered helicopter at Keystone Airport. Calderon carried a 9 mm semi-automatic pistol and a .38 caliber revolver. The defendants also possessed the suitcase containing the assault rifles. After they were in the air, Calderon put a gun to the pilot's head and directed him to fly over the city of Starke. The defendants gave the pilot a clipboard with a map showing Starke and the Union Correctional Institution with a landing area, and placed a headset with tape recorded instructions on him. The pilot followed the directions, flying toward Union Correctional Institution. When they were approximately three miles from the prison, however, Clark and Calderon changed their minds and decided to abandon the plan. They instructed the pilot to return to the Keystone Heights airport, where the pilot landed the aircraft and carried the suitcase to a vehicle as instructed. Clark and Calderon then left the airport in the vehicle, disposed of the suitcase, and were subsequently apprehended during a traffic stop in St. Johns County, Florida.

Clark entered into a plea agreement, whereby she agreed to plead guilty to the air piracy charge. The plea agreement provided that the charge "carrie[d] a maximum sentence of a minimum mandatory 20 years' imprisonment up to life imprisonment." Clark was also informed that if she provided "substantial assistance," she might obtain "a sentence below a statutory minimum, if any,

pursuant to 18 U.S.C. § 3553(e)." At the plea colloquy, the district court twice stated that "the maximum penalty if you are convicted of count two of the superseding indictment is a mandatory minimum 20 years imprisonment up to life imprisonment . . . ." Clark affirmed that she understood this penalty.

The PSI noted that Clark's base offense level was 38, and recommended a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1 (a) & (b). Based on an adjusted offense level of 35 and a criminal history category of I, the recommended sentencing range was 168-210 months. Pursuant to 49 U.S.C. § 49502, however, Clark was subject to a statutory minimum term of 240 months. Therefore, the required guidelines sentence was 240 months' imprisonment, pursuant to U.S.S.G. § 5G1.1(c)(2) (providing that a sentence imposed within the applicable guideline range may not be less than any statutorily required mandatory minimum sentence).

At the sentencing hearing, Clark urged the district court to depart downwards on the following grounds: (1) Clark's behavior constituted a single act of aberrant behavior; (2) as soon as Clark was arrested, she started cooperating with the authorities by showing them the firearms and bringing them to locations where the firearms were deposited; (3) Calderon received the benefit of a downward departure under facts that were similar to Clark's case; (4) Clark was

coerced into committing her acts by other inmates at the prison; and (5) the Seventh Circuit indicated that it was improper to deny a downward departure based on the fact that the defendant was a deportable alien.

Both the government and Clark conceded that the district court could depart downward here. The government argued, however, that Clark was not entitled to a downward departure because Clark was more culpable than Calderon, since she became involved in the scheme earlier than Calderon, and she was involved with planning the scheme on two prior occasions, which were subsequently aborted. Moreover, the government argued, Clark solicited money from family members and friends of the death-row inmates, rented a storage facility to store items relating to the scheme, bought the guns in furtherance of the scheme, hid articles of clothing in other places in anticipation of the escape, flew to England after aborting the scheme on the two prior occasions, and booked the charter flight for the helicopter on the second and the instant occasion.

The court continued the sentencing hearing, and, during the interim, Clark filed an amended motion for a downward departure based on coercion or duress. At the second sentencing hearing, Clark reiterated her argument for a downward departure based on coercion or duress, contending that her husband told her that if she did not commit the act, one of the other prisoners, who was connected to the

Mafia, would harm her family. Clark also reiterated her argument for a downward departure because the offense constituted a single act of aberrant behavior.

The district court granted a downward departure based on aberrant behavior, as well as on coercion or duress, stating that it found Clark's behavior to be aberrant because she (1) stopped the plans to commit the act on two prior occasions and ended up getting "sucked back in for whatever reason"; (2) had no prior criminal history; and (3) was threatened by another inmate that if she did not commit the act, she and her family would be harmed. In addition, the district court stated that "in the final act of putting this thing together and actually getting this helicopter and this gun and committing a serious offense, there are – there was threats and duress which may have affected her – her ability to – to think clearly, that coupled with the fact that she's in love with this guy on death row, so I'm going to find also the threats and duress." After the government objected to the downward departure based on the grounds listed by Clark, the district court sentenced Clark to 150 months' imprisonment.

On appeal, the government argues that the district court may depart below the statutory minimum sentence in only two situations, neither of which is present here: (1) when the United States files a "substantial assistance" motion under 18 U.S.C. § 3553(e); or (2) when the defendant satisfies the criteria for "safety valve"

relief under 18 U.S.C. § 3553(f) and is charged with a controlled substance offense. Since Clark's sentencing scheme presented neither of these exceptions, the government asserts that the district court plainly erred by imposing a 150-month sentence in light of the 240-month mandatory statutory minimum sentence. The government concedes that it did not raise this argument in the district court, but urges that the downward sentence, which was a significant (90-month) departure from the mandatory statutory minimum, constituted plain error in this case. We agree.

The sentencing guidelines make clear that where a guidelines range falls entirely below a mandatory minimum sentence, the court must follow the mandatory statutory minimum sentence. See United States v. Simpson, 228 F.3d 1294, 1302-04 (11th Cir. 2000); U.S.S.G. § 5G1.1. We emphasize that this case is governed by the mandatory minimum sentences established by Congress, and is not a case where the district court had any discretion to depart downward from the relevant sentencing guidelines range. See Koon v. United States, 518 U.S. 81, 95-96, 116 S. Ct. 2035, 2045, 135 L. Ed. 2d 392 (1996). The relevant statutorily authorized mandatory minimum sentences exceeded the relevant sentencing guidelines range, and, therefore, plainly took precedence over them. See United States v. Eggersdorf, 126 F.3d 1318, 1320 (11th Cir. 1997).

The guideline ranges for Clark's offense was 161 to 210 months' imprisonment, but Clark's offense of conviction carried a statutorily imposed minimum sentence of 240 months' imprisonment. See 49 U.S.C. § 46502. Neither of the two exceptions that we enumerated in Simpson is applicable in this case because the government chose not to file a substantial-assistance motion and Clark's offense of conviction was not for a controlled substance offense. Thus, the district court committed error by imposing a sentence below the statutory minimum sentence.

Moreover, the district court's misapplication of the guidelines was plain error. In a similar case, the Sixth Circuit, applying a plain error standard of review, reversed a district court's imposition of a downward departure that "dramatically impact[ed] the sentence, and thereby affect[ed] the substantial rights of the government and the people of the United States that [the] defendant be sentenced correctly in accordance with the legal principles of the sentencing guidelines." United States v. Barajas-Nunez, 91 F.3d 826, 833 (6th Cir. 1996). "Permitting sentencing courts to disregard governing law would diminish the integrity and public reputation of the judicial system." Id. The Sixth Circuit also observed:

> [W]e cannot assume that either the Olano Court or the drafters of Fed.R.Crim.P. 52(b) intended that only defendants and never the

9

> government should be able to demonstrate that a plain error affected substantial rights. . . . Pursuant to Olano, 507 U.S. at 734, 113 S.Ct. at 1777-78, the government can show an error affects substantial rights if the error affects the outcome of the district court proceedings. Here, the error may have produced the extraordinary downward departure to one-eighth of the sentencing guideline range midpoint, dramatically impacting the sentence, and thereby affecting the substantial rights of the government and the people of the United States that this defendant be sentenced correctly in accordance with the legal principles of the sentencing guidelines.

Id.; see also United States v. Perkins, 108 F.3d 512, 517 (4th Cir. 1997) ("strongly disapproving" of the district court's imposition of a sentence below the statutory minimum and holding that the sentence constituted plain error, which affected the fairness, integrity, and public reputation of judicial proceedings); United States v. Rodriguez, 938 F.2d 319, 322 & n.4 (1st Cir. 1991) (holding that the sentence that was below the minimum mandated by Congress affected substantial rights and was subject to plain error review notwithstanding the absence of a contemporaneous objection); but see United States v. Garcia-Pillado, 898 F.2d 36, 39 (5th Cir. 1990) (holding that the government's failure to raise the issue below was a waiver of the government's right to appeal the sentence below the statutory minimum).

We agree with the Sixth Circuit's reasoning and find that the circumstances presented in this case also result in a violation of the government's substantial rights. Indeed, the district court's imposition of a sentence that is less than two-thirds of the statutorily-required minimum shows a disregard for governing law,

10

diminishes the fairness of the criminal sentencing scheme by allowing disparate sentences to be imposed on similarly-situated defendants, and undermines the integrity and public reputation of the judicial system. See Barajas-Nunez, 91 F.3d at 833. "[W]e can discern no principled basis for restricting access to 'plain error' review of an illegal sentence which contravenes either a statutory minimum or a statutory maximum." Rodriguez, 938 F.2d at 322 n.4.

The sentence imposed in this case was also an extraordinary downward departure, to less than two-thirds of the statutorily-required minimum. In the face of such harm to the government's proper operation, and the public's confidence in that proper operation, we vacate Clark's sentence and remand with instruction to resentence Clark to the statutory minimum term of 240 months' imprisonment.[1]

## II.

On cross-appeal, Clark argues that the magistrate judge failed to comply with the requirements of Fed. R. Crim. P. 11(c) at the plea colloquy. Specifically, Clark asserts that the magistrate judge plainly erred by not informing her about the mandatory minimum sentence, and that the error was not harmless under Fed. R. Crim. P. 11(h), as there is no evidence in the record to demonstrate that she fully

---

[1] Since the 240-month statutory minimum term is above the entire guideline range, the government's alternate argument that the district court abused its discretion by imposing a downward departure sentence based on a single act of aberrant behavior and upon coercion or duress is moot.

11

and completely was aware of the mandatory minimum penalty.  We are unpersuaded.

A court accepting a guilty plea must comply with Rule 11, and, in particular, must address its three "core concerns" by ensuring that (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant understands the consequences of his plea.  See  United States v. Jones, 143 F.3d 1417, 1418-19 (11th Cir. 1998).  Before accepting a guilty plea, the court must specifically inform the defendant of any mandatory minimum penalty provided by law. See Fed. R. Crim. P. 11(c)(1).  In Jones, however, this Court held that "where a signed, written plea agreement describing a mandatory minimum sentence is specifically referred to during a Rule 11 plea colloquy, the core principle that the defendant be aware of the consequences of his plea has been complied with." 143 F.3d at 1420.

Here, the written plea agreement explicitly provided that the charge "carrie[d] a maximum sentence of a minimum mandatory 20 years' imprisonment up to life imprisonment."  At the plea colloquy, the magistrate judge also twice stated that "the maximum penalty if you are convicted of count two of the superseding indictment is a mandatory minimum 20 years' imprisonment up to life imprisonment . . . ."  Simply put, Clark was adequately informed of the minimum

12

20-year mandatory term of imprisonment for an air piracy charge through the provision in the plea agreement and the magistrate's recitation of the plea agreement during the plea colloquy.

## III.

In sum, we conclude that the district court committed reversible plain error since it was without authority to sentence Clark to a term of imprisonment below the statutory minimum sentence prescribed by Congress.  We also find that the magistrate judge fully and adequately advised Clark of the consequences, nature, and extent of the guilty plea to a minimum mandatory charge through a specific provision in the plea agreement and through statements during the plea colloquy. Accordingly, we vacate and remand Clark's sentence for resentencing to the statutory minimum term of 240 months, and affirm the district court's acceptance of Clark's guilty plea.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**