[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13663
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cr-00398-EAK-AEP-2

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JUAN CARLOS SANTIAGO,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 21, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

The government appeals the district court's sentencing of Juan Carlos

Santiago to a few hours of time served and five years of supervised release for

conspiracy to distribute 500 or more grams of a potent form of methamphetamine known as "ICE." We vacate the sentence and remand to the district court for resentencing.

**I.**

Law enforcement officers stopped Santiago's car three minutes after he had received nearly one kilogram of ICE from a suspected distributor, Jaime Chavez-Torres. The deputies seized the ICE but allowed Santiago to leave, purportedly because they had to test the drugs for fingerprints since Santiago denied knowledge of the drugs in his vehicle. In fact, the deputies and several DEA agents had been surveilling Santiago throughout the day as part of their investigation into a suspected drug trafficking organization. The sheriff's office had previously made several controlled purchases of methamphetamine from Santiago and, as a result, the DEA had obtained authorization to intercept Santiago's phones. They were, therefore, able to listen when Santiago called Chavez-Torres to warn him that the police were watching them.

Around three weeks later, Santiago agreed to speak to federal agents at his home. He admitted to receiving the ICE from Chavez-Torres and, again, was not arrested. Santiago continued to cooperate with authorities to the best of his ability for the next year but was "relatively frozen out" of the conspiracy after the traffic

2

stop. Still, the government credited Santiago's cooperation with "contribut[ing] to the guilty plea of Mr. Chavez-Torres."

Chavez-Torres was indicted about one year after deputies found the drugs in Santiago's truck. Six months later, Santiago and Chavez-Torres were charged by superseding indictment with (1) conspiracy to distribute and possess with intent to distribute and (2) possession with intent to distribute 500 or more grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii). Both Santiago and Chavez-Torres signed plea agreements; Santiago pleaded guilty to the conspiracy count and agreed to cooperate with the government in exchange for dismissal of the possession count.

Based on the quality and quantity of methamphetamine that was found in his truck, the probation office calculated Santiago's base offense level at 34. Because, in part, his criminal history placed him in category I, Santiago met the criteria for a two-level decrease under U.S.S.G. § 5C1.2. He also merited a two-level decrease for acceptance of responsibility and an additional one-level decrease for assisting authorities. Accordingly, his total offense level was 29.

The presentence investigation report also described Santiago's personal history. It stated that he had been in an "on and off" relationship with a woman named Margaret Garcia for approximately five years. The couple had two children together, born in August 2017 and August 2018, who both resided with Garcia.

Neither Santiago nor the government objected to the presentence investigation report, so the district court adopted the entirety of the factual statements and guideline calculations contained therein. Based on his offense level and criminal history category, Santiago's recommended guidelines range was 87–108 months of imprisonment followed by two to five years of supervised release. The government moved for a two-level downward departure under U.S.S.G. § 5K1.1 based on Santiago's substantial assistance during their investigation of Chavez-Torres, who the government described as a "high-level trafficker." A two-level downward departure from Santiago's pre-departure guidelines range would have resulted in a new guidelines range of 70–87 months. Santiago then asked the court to consider a downward variance based on his lack of a significant criminal history, substantial assistance to the government, the fact that he had two young children, and the fact that Garcia was pregnant with his third child.

Santiago requested a sentence of sixty months. The government recommended a sentence of seventy months but conceded that sixty months was "not an unreasonable request under the circumstances" due to Santiago's prolonged cooperation and "scant to no criminal history prior to this."

The district court then asked Santiago a number of questions about his family. It asked him about Garcia's pregnancy and his daughter who was going through physical therapy after suffering a burn. It asked him about the family's financial

4

situation, whether Garcia could continue working after the baby is born, and about his health issues.

After questioning Garcia about her financial and job situation, the district court asked the government at sidebar "[a]nd you could only get two levels up the line?" Unsatisfied with the government's answer, the court stated "[w]ell, you could tell the U.S. Attorney if she's got any questions about what I'm going to do, have her call me," and "[y]ou tell them to call me directly and I will tell them why I'm going to do what I'm going to do. Okay?"

What the court was "going to do" was sentence Santiago to five years of probation. The court explained that it was giving Santiago a chance that it viewed as "required in [his] situation." The court stated that Santiago had "done everything [he could] to try to cooperate," and that the court "appreciate[d] what [he had] done." The court considered a non-custodial sentence the only way for him "to get a chance for a future." "Otherwise," the court said, it did not "know what would happen to [his] wife and children."

The probation officer informed the court that, because Santiago had pleaded guilty to a Class A felony, it was illegal to sentence him to probation. The court responded: "I want to know what I can legally do in this situation even if I have to put him on some type of special, you know, one day in something, whatever." The probation officer suggested imposing a sentence of time served and a term of

supervised release based on the few hours that Santiago had been incarcerated after arrest. The court stated that it was imposing that sentence after "having reviewed the pre-sentence report and the advisory guidelines pursuant to Title 18 United States Code Sections 3551 and 3553." The court further explained that "after considering the advisory sentencing guidelines and all the factors identified in Title 18 United States Code Section 3553(A)(1) through (7), the Court finds the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing." And it found "the sentence to be reasonable and adequate under the circumstances herein." As the court predicted, the government objected to that sentence.

The court issued a judgment and statement of reasons later that day. In the statement of reasons, the court adopted the presentence investigation report without change and determined that the applicable guideline range, before departures or variances, was 87–108 months. The court said it departed downward from that range based on the government's motion and varied further downward based on "role in the offense," "[t]he defendant's extensive cooperation with the government that warranted a variance," and "family ties and responsibilities." The court did not provide any additional explanation for the substantial variance. The government timely appealed.

6

## II.

We generally review the reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). If a party raises an argument for the first time on appeal, however, we review for plain error. *See United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Spoerke*, 568 F.3d 1236, 1244–45 (11th Cir. 2009)). That standard applies equally to a challenge by the government, in which we consider whether the sentence "affected the substantial rights of the government and the people of the United States that the defendant be sentenced correctly in accordance with the legal principles of the sentencing guidelines." *United States v. Clark*, 274 F.3d 1325, 1329 (11th Cir. 2001) (cleaned up).

"The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the chosen sentence falls outside the applicable guideline range, then the court must also state "the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form." *Id.* at 3553(c)(2). And "[t]he district court's reasons must be sufficiently specific so that

7

an appellate court can engage in the meaningful review envisioned by the Sentencing Guidelines." *United States v. Suarez*, 939 F.2d 929, 933 (11th Cir. 1991).

That meaningful review consists of a two-step process. This Court must "first ensure that the district court committed no significant procedural error." *Gall*, 552 U.S. at 51. A sentencing court commits a procedural error by (1) "failing to calculate (or improperly calculating) the Guidelines range"; (2) "treating the Guidelines as mandatory"; (3) "failing to consider the § 3553(a) factors"; (4) "selecting a sentence based on clearly erroneous facts"; or (5) failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 51. If the district court did not commit a significant procedural error, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard" and "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* We may not, however, "apply a presumption of unreasonableness" merely because a sentence is outside of that range. *Id.*

We will not vacate a sentence as substantively unreasonable unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. McBride*, 511 F.3d 1293, 1297–98 (11th Cir. 2007) (internal

8

quotation marks omitted). And "a district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). But a sentence suffering from such a symptom is not necessarily unreasonable—it "*may* in fact be unreasonable, depending on an examination of the 'totality of the circumstances.'" *Id.* at 1192 (quoting *Gall*, 552 U.S. at 50).

Section 3553(a) requires that a sentence be "sufficient, but not greater than necessary" to achieve the goals of sentencing. Those goals are: (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (2) "to afford adequate deterrence to criminal conduct;" (3) "to protect the public from further crimes of the defendant;" and (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D). The district court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" the applicable guidelines range; "any pertinent policy statement" of the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." *Id.* at § 3553(a)(1), (3)–(7). The weight given to each of those factors is committed to the sound

9

discretion of the district court. *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

When a sentencing court determines that a below-guidelines sentence is warranted, it must consider the extent of its deviation from the guidelines and ensure that its justification is sufficiently compelling to support the variance. *Gall*, 552 U.S. at 50. Accordingly, a major downward variance requires more justification than a minor one. *United States v. Irey*, 612 F.3d 1160, 1198 (11th Cir. 2010) (holding that a downward variance of 12.5 years, or 42% was a major variance). A major variance cannot be sufficiently justified solely on the grounds of the defendant's characteristics and motive. *See Pugh*, 515 F.3d at 1200-01 (holding that a 97-month downward variance for a child-pornography conviction was not sufficiently justified by the defendant's lack of a criminal history, personal characteristics, and the low risk that he would re-offend).

### III.

We begin our review by determining whether the district court committed a significant procedural error. *See Gall*, 552 U.S. at 51. We conclude that it did. And its procedural error is such that we cannot assess the substantive reasonableness of the sentence.

Section 3553(c) requires that a sentencing court "state in open court the reasons for its imposition of the particular sentence." Here, the district court stated

10

that it was "grant[ing] [Santiago's] 18 U.S.C. 3553 motion on a variance." It further stated that, based on the facts and circumstances of the case, it was "going to depart downward." But it never explained the extent of that downward departure or variance, instead stating "whether we do it under the motion by the Government for a 5K, which is probably the cleaner way to do it, but I think both your motion for a variance and also the 5K allows me to come all the way down and place you on probation for five years." When the probation officer explained that Santiago was not eligible for probation, the court said: "One day. Time served. Supervised release for five years. That will work. I want all that. Mental health, after care, he needs that. I didn't think he had served any time. If he served one day, that will work." The only other explanation for the sentence that the court provided was to the government at sidebar, when it said "you could tell the U.S. Attorney if she's got any questions about what I'm going to do, have her call me . . . You tell them to call me directly and I will tell them why I'm going to do what I'm going to do."

The district court erred by failing to state in open court the specific reasons for imposing this sentence. First, the court did not state its reasons for imposing the sentence in open court, instead instructing the U.S. Attorney to call the court off the record. By demanding that the U.S. Attorney call the district court to be told its reasoning, the court called into question the fairness, integrity, and transparency of the judicial proceeding. Second, the district court imposed a sentence that falls

outside of the guideline range it had calculated but never stated the specific reasons for doing so. The court never stated the degree of its departure or recalculated the guidelines range after that departure so that this Court could meaningfully review either the departure or any variance. That error prevents this Court from "engag[ing] in the meaningful review envisioned by the Sentencing Guidelines." *Suarez*, 939 F.2d at 933. Neither the parties nor this Court can assess whether the defendant was "sentenced correctly in accordance with the legal principles of the sentencing guidelines." *Clark*, 274 at 1329.

Because the district court did not explain its reasons for imposing this sentence, we are unable to determine whether the sentence was substantively unreasonable. Accordingly, we must remand for resentencing. We note the following to assist the district court at resentencing. *See United States v. McVay*, 447 F.3d 1348, 1356 (11th Cir. 2006).

First, the district court narrowly focused on Santiago's history and characteristics and failed to weigh any other relevant Section 3553(a) factors, such as the seriousness of the offense, the need for just punishment or deterrence, and the need to avoid sentencing disparities. The district court questioned Santiago about his relationship with Garcia, his children, educational goals, and ability to provide for his family. But the district court did not consider the seriousness of the offense to which Santiago pleaded guilty: conspiracy to distribute and possess with intent to

distribute at least 978.6 grams of ICE. The sentencing statute prohibits probation for a Class A felony, but the district court crafted an effectively probationary sentence anyway. *See* 18 U.S.C. § 3561(a)(1) (providing for probation unless the offense is a Class A or Class B felony). Notably, Santiago himself argued that a sixty-month sentence would provide adequate deterrence, reflect the seriousness of the offense, and promote respect for the law.

Second, assuming the district court varied from the guidelines range instead of, or in addition to, departing under the Guidelines, the district court did not provide a sufficiently compelling explanation—or really any explanation—for its major variance to an effectively non-custodial sentence. The district court said that it was "going to take a chance" on Santiago but it did not explain why such a "chance" was "required" in his situation. A major justification is necessary for a major variance. *See Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). The district court's only on-the-record justification for its noncustodial sentence was "the facts in this case and these circumstances." But, because the district court did not address key Section 3553(a) factors, it is unclear which facts and circumstances the district court meant.

13

In its written statement of reasons, the court listed "role in the offense, "[t]he defendant's extensive cooperation with the government," and "family ties and responsibilities" as the reasons for the sentence. As to "family ties and responsibilities," this Court held in *Pugh* that a defendant's personal characteristics are insufficient to justify a major variance from the Guidelines. *See* 515 F.3d at 1200–01. Accordingly, without a more substantial justification, Santiago's non-custodial sentence for conspiracy to distribute 978.6 grams of methamphetamine is likely outside the range of reasonable sentences.

## IV.

We **VACATE** and **REMAND** to the district court for resentencing.