[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11393

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BRIAN MIKKELSON,
a.k.a. Crash,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00218-WFJ-AAS-19

_____

Before LAGOA, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Brian James Mikkelson appeals his 192-month sentence for two counts of assault in aid of racketeering activity. On appeal, Mikkelson argues his sentence is unreasonable. After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In March 2023, a federal grand jury charged Mikkelson and eight other defendants with various racketeering related offenses. Mikkelson was charged with two counts of assault in aid of racketeering activity, 18 U.S.C. §§ 1959(a)(3) & 2, in Count 13 and Count 14 of the indictment. In January 2024, Mikkelson pled guilty to both counts without a plea agreement.

At the change-of-plea hearing, the government summarized the factual basis for the plea as follows. Mikkelson was a member and associate of a group called "the Unforgiven," which is "a violent, white-supremacist organization whose activities affected interstate and foreign commerce." The government explained that the ideals of Unforgiven were:

Propagating Aryan philosophy;

Preserving and expanding the power, territory, and reputation of the enterprise through recruitment, indoctrination of white supremacist ideology, pursuit of business and political leadership, intimidation, and threats and acts of violence;

> Keeping rivals in fear of the enterprise and in fear of its members and associates through threats and acts of violence;
>
> Enriching the members and associates of the enterprise through, among other things, distribution of weapons, narcotics, and contraband;
>
> Creating a front to resist and rebel against a perceived constant and almost brutal victimization of whites in the Florida Department of Corrections; and
>
> Protecting enterprise members by concealing, destroying evidence of, and threatening or retaliating against witnesses to its illegal activities.

In support of these ideals, members of the Unforgiven engaged in racketeering, including acts and threats involving murder, kidnapping, and robbery. They also committed "violence against perceived racial enemies" and members of the group "who failed to abide by the [Unforgiven's] constitution and bylaws." The Unforgiven perceived cooperation with law enforcement as one of the most serious violations of its code and would punish members who committed that violation with extreme violence.

Both of Mikkelson's convictions related to violence against other Unforgiven members, W.H. and P.K. As for Count 13, W.H. was a member of the Unforgiven perceived to have violated group rules. Members confronted W.H. in July 2020 and sought to "forcibly defac[e]" the tattoos that marked W.H as a member of the group. The men, including Mikkelson, attacked W.H., striking

him "with hands and weapons." Mikkelson threatened to burn W.H.'s tattoos off with a torch. W.H. ultimately let the men cover his Unforgiven tattoo, fearing that he would be killed if he did not let them.

Regarding Count 14, members of the Unforgiven found out that another member, P.K., was using drugs in violation of the group's rules. He was also accused of being "a snitch . . . for making statements to officers" while in prison. In October 2020, P.K. arrived at a motel where he often spent time. P.K. saw several Unforgiven members, including Mikkelson, who he believed were armed with a gun and a knife and would attack him. One Unforgiven member tripped P.K. which caused him to fall onto a curb. Another member began stomping on P.K.'s head, and the members "cut P.K.'s lower neck," an area of the body that was a "common" place for Unforgiven tattoos. Mikkelson fled after participating in the assault, but law enforcement captured him in nearby woods after a pursuit. They also found "[a] backpack containing a blow torch, shackles, and rope" in the woods near him.

Before sentencing, a probation officer prepared a PSI which provided additional information about the Unforgiven and the two assaults. Members of the Unforgiven are "required to carry out acts of extreme violence to gain entry into the gang," are "required to get tattoos such as swastikas, iron crosses, and lightning bolts," and are required to attend regular meetings. At some of these meetings, members vote on the appropriate punishment for

members who violate the organization's code and whether to revoke their membership.

Regarding the assault on W.H., the PSI explained that Mikkelson struck W.H. in the head with brass knuckles and another member hit him with a metal cane. Mikkelson then threatened to burn W.H.'s tattoo off with a torch or remove it with a straight razor. Mikkelson and another member ultimately held W.H. down and lit the torch, but they were interrupted by W.H.'s roommate. After one member brandished a firearm, W.H.'s roommate retreated, and the members held W.H. down and covered his tattoo with a tattoo gun. W.H. was left with visible scarring on his neck. W.H. moved out of state, thinking that the Unforgiven were still after him and wanted to kill him.

As related to the assault on P.K., the PSI explained that Unforgiven members voted to remove P.K.'s tattoo because of his contact with law enforcement and his drug use. P.K. was approached by Mikkelson and other members of the group at the hotel, who attacked him. During the assault, Mikkelson threatened to stab P.K., who sustained multiple deep cuts on his neck. Finally, the PSI noted that, when Mikkelson was arrested for the instant offense, he had approximately 1.6 grams of methamphetamine.

The PSI next calculated Mikkelson's offense level, first assigning each assault a separate offense level and then applying the multiple count enhancement, *see* U.S.S.G. §§ 3D1.2, 3D1.4.

For Count 13, the PSI calculated a base offense level of 14 because Mikkelson conspired to commit aggravated assault.

U.S.S.G. §§ 2A2.2, 2E1.3. It then added: (i) two levels because the assault involved more than minimal planning, U.S.S.G. § 2A2.2(b)(1); (ii) four levels because a dangerous weapon—brass knuckles—was used, U.S.S.G. § 2A2.2(b)(2)(B); and (iii) six levels because the victim suffered an injury between "serious bodily injury" and "permanent or life-threatening bodily injury," U.S.S.G. § 2A2.2(b)(3)(E). It also added two levels because the victim was physically restrained, U.S.S.G. § 3A1.3. For Count 14, the PSI similarly calculated a base offense of 14, *see* U.S.S.G. §§ 2A2.2, 2E1.3, and applied the same enhancements regarding planning, U.S.S.G. § 2A2.2(b)(1), use of a dangerous weapon, U.S.S.G. § 2A2.2(b)(2)(B), and injury to the victim, U.S.S.G. § 2A2.2(b)(3)(E). However, Count 14 did not receive the two-level enhancement for physical restraint.

Under the multiple count adjustment, the PSI calculated a combined adjusted offense level of 30, which was reduced by three levels based on Mikkelson's acceptance of responsibility, leading to a total offense level of 27.

Next, the PSI calculated Mikkelson's criminal history score. The PSI noted many arrests and convictions, but only some generated criminal history points under the Guidelines. Specifically, the PSI assigned Mikkelson two criminal history points for committing grand theft and two points for dealing in stolen property and resisting an officer without violence in 2016. The PSI assigned Mikkelson two more criminal history points for a 2017 conviction for passing counterfeit currency. Mikkelson received three criminal

history points for his 2018 convictions for grand theft, possession of hydromorphone, petit theft, driving with a suspended or revoked license, and possession of drug paraphernalia. He received two more criminal history points for 2020 convictions for felony fleeing/eluding a law enforcement officer, driving with a suspended or revoked license, and driving without a motorcycle license.[1] He received another criminal history point for a 2021 conviction for driving with a suspended or revoked license and possessing and/or using drug paraphernalia. Then, for a 2022 conviction for operating a car while having a license revoked for habitual traffic violations, the PSI awarded Mikkelson two more criminal history points. Finally, because Mikkelson had seven or more points and committed the instant offense while under a criminal justice sentence—*i.e.,* while he was on probation—the PSI added another criminal history point, leading to 15 criminal history points. 15 criminal history points put Mikkelson in the highest criminal history category under the Guidelines: VI.

Based on a total offense level of 27 and a criminal history category of VI, the PSI calculated Mikkelson's guideline imprisonment range to be 130 to 162 months. The statutory maximum term of imprisonment for a violation of 18 U.S.C. § 1959(a)(3) is 20 years.

The PSI also included various personal information about Mikkelson. It noted that when he was young, Mikkelson was

---

[1] As discussed further below, this offense related to Mikkelson's conduct after fleeing from the police following the assault on P.K.

raised by his mother who was often absent and suffered from drug addiction.  He frequently went hungry or went to friends' houses to eat.  At one point, Mikkelson's father took him in but then kicked him out because of Mikkelson's drug use.  Mikkelson also reported being molested as a child and that he was not believed when he reported it.  Mikkelson and his fiancé had a son in September 2022, but their son tragically died the next month.  Mikkelson also reported a long history of substance abuse, including struggles with alcohol, crack cocaine, Roxicodone, prescription pain medication, heroin, and methamphetamine.

Mikkelson objected to the PSI.  First, he objected to any additional information in the PSI beyond what he agreed to in his change-of-plea hearing.  Second, he objected to the enhancements under U.S.S.G. § 2A1.1(b)(3)(E), contending that the injuries W.H. and P.K. suffered were not so serious as to justify that enhancement, rather than the lesser enhancements for "serious bodily injury" or "bodily injury."

In a sentencing memorandum, Mikkelson sought a downward variance from the guidelines range based on his history and characteristics.  He contended that his difficult childhood and lack of treatment for his substance abuse and mental health issues significantly contributed to his criminal behavior.  He also noted that he had family and friends who supported his rehabilitation efforts and that he was able and willing to become "a productive member of society upon his release."  He reiterated his objection to the offense level calculation.    Mikkelson also submitted various

mitigating evidence, including letters from family and friends and information about programming he completed while incarcerated.

At sentencing, the court first addressed Mikkelson's objection about the victims' injuries. The government introduced pictures of the injuries suffered by the victims. After consideration of that evidence, the court overruled Mikkelson's objection about the severity of the injuries. Accordingly, it adopted the PSI and asked the parties for their argument on what a reasonable sentence would be.

The government asked for a 160-month sentence, arguing that the Unforgiven "is a brutal and violent gang" and Mikkelson "still present[ed] himself as a member." It added that the two attacks were brutal and violent and part of a long history of violating the law. Conceding that Mikkelson had made "admirable" steps "to better himself," the government argued that the aggravating factors were weighty and that the sentence needed to reflect the seriousness of the offense, try to deter future conduct by Mikkelson and those like him, and to protect the public from individuals, like Mikkelson, who have "demonstrated through this case just how brutal [they are] willing to be."

Mikkelson, through counsel, argued that he no longer "present[s] as a member of the Unforgiven." He also conceded that "these were obviously violent crimes," but that most of his previous offenses were driving offenses or drug-related charges and he had not committed violence in the past. He also noted that there were mitigating facts in the record, including his "history of sexual

victimization, untreated substance abuse, and untreated mental health issues." He highlighted the tragic loss of his son and his positive efforts in prison since his arrest and argued that a low-end guidelines sentence or a downward variance was appropriate. Mikkelson then gave an allocution, in which he apologized for his conduct and explained his participation and affiliation with the gang.

The court recommended Mikkelson for drug treatment while in prison, as well as specific employment-related programming. It noted that it did not doubt Mikkelson's sincerity. Yet, it explained that Mikkelson had "a record . . . of a lack of amenability to supervision," which it found concerning. The court then addressed the nature of the offense, which it found incredibly aggravating, explaining:

> This was unusually cruel, gratuitous, terroristic violence. It is just a horse of a different color. And it [is] almost just really not understandable to people who don't live in this world that we all live in. Mr. Mikkelson, you had a blowtorch. You lit it, you know, brass knuckles. And then in your backpack was a torch, ropes, leg shackles, gloves. It's just not like a carjacking or somebody gets mad and punches somebody. It's just a different level.

The court explained that this conduct "requires and calls for . . . an upward variance" based on the § 3553(a) factors, specifically the need for the sentence to reflect a just punishment, to deter criminal conduct, and to protect the public. Accordingly, it sentenced Mikkelson to 192 months imprisonment on each count, with the

sentences to run concurrently.  Upon release, the court ordered Mikkelson to serve a three-year term of supervised release.

The court also noted that the 192-month sentence imposed was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." *See* 18 U.S.C. § 3553(a).  It reiterated that it considered the aggravating nature of Mikkelson's involvement in this "highly organized white supremacist organization" as well as his difficult childhood and documented substance abuse and mental health issues.  Neither party objected further, and the court entered judgment consistent with its oral ruling.  Mikkelson's appeal followed.

## II. STANDARDS OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016).  First, we review the sentence for procedural reasonableness.  In doing so, we determine "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range, treating the Sentencing Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936.  We review *de novo* the proper interpretation and application of the Sentencing Guidelines.  *See United States v. Pulido*, 133 F.4th 1256, 1279 n.20 (11th Cir. 2025).

Second, we review "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors."  *Trailer*, 827 F.3d at 936.  "In reviewing the

[substantive] reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party arguing that a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

However, issues raised for the first time on appeal are reviewed only for plain error. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001). "To establish plain error, a defendant must show that there was an (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022). "Where *all three* conditions are met, we may then exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (emphasis added).

## III. DISCUSSION

### A. *Mikkelson has not shown Reversible Procedural Error.*

Mikkelson argues, for the first time in his initial brief, that the district court erred in calculating his guidelines range. On this issue, his brief states: "[t]he court overlooked that one of the state law offenses for which Mikkelson was assessed two criminal

history points was the very same offense for which he was being prosecuted in this federal case."[2]

Mikkelson received two of his fifteen criminal history points for a Florida sentence for felony fleeing or eluding a law enforcement officer after he had committed his federal crimes. Even if we assume, without deciding, that Mikkelson should not have received those two criminal history points, and that this error was plain, the two points did not affect his substantial rights. *Utsick*, 45 F.4th at 1332. That is because if he received two less criminal history points, his criminal history category would have stayed the same—VI—and his guidelines range would not have changed. *See* U.S.S.G. Ch. 5 Pt. A (providing that defendants with 13 or more criminal history points are in a criminal history category of VI). Accordingly, any error would not satisfy the first three prongs of the plain-error test, so Mikkelson's unpreserved procedural challenge does not entitle him to relief. *Utsick*, 45 F.4th at 1332.

### B. *Mikkelson has not shown his Sentence is Substantively Unreasonable.*

Mikkelson's second argument is that his sentence is substantively unreasonable. As part of this argument, he contends that the district court improperly considered his disregard for the law—which is not a listed § 3553(a) factor—rather than the public's potential disregard for the law that would arise from an unreasonably

---

[2] The government argues that this fleeting reference to the Guidelines calculations amounts to abandonment. Because the argument fails under plain error review, we need not decide this point.

lenient sentence—which, he contends, is a listed § 3553(a) factor. He notes that our precedent requires more significant justifications for major variances from the guidelines range than for minor variances, and he contends that the district court's error undermines the significant justification necessary.

Section 3553(a) requires that the district court "shall impose a sentence sufficient, but not greater than necessary," to accomplish multiple goals, including: "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes . . . ." 18 U.S.C. § 3553(a), (2)(A)-(C).  In addition, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the guideline sentencing range; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct; and the need to provide restitution to any victims.  *Id.* § 3553(a)(1), (3)-(4), (6)-(7).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355.  A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).  "Rather, a district

court's acknowledgment that it has considered the §3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

Upward variances are imposed based on the § 3553(a) factors. *See United States v. Overstreet*, 713 F.3d 627, 637–38 (11th Cir. 2013). We have held that "a sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public." *Butler*, 39 F.4th at 1355. It may also do so if it finds "the Guidelines range was insufficient in light of a defendant's criminal history." *Id.* "[D]istrict courts are afforded 'broad leeway in deciding how much weight to give to prior crimes the defendant has committed.'" *Id.* (quoting *Rosales-Bruno*, 789 F.3d at 1261).

"A district court making an upward variance must have a justification compelling enough to support the degree of the variance . . . . " *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014). Still, we will vacate an upward variance sentence "only if 'we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012) (quoting *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009)). One sign of reasonableness is that the sentence is well below the statutory maximum. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021).

Under these circumstances, Mikkelson's sentence is substantively reasonable.  As the district court recognized, Mikkelson's offense conduct is highly aggravating.  *See* 18 U.S.C. § 3553(a)(1) (requiring sentencing courts to consider "the nature and circumstances of the offense"); *id.* § 3553(a)(2) (requiring sentences "to reflect the seriousness of the offense").  Mikkelson committed gratuitously violent assaults to punish W.H. and P.K.'s failure to abide by the code of conduct of the Unforgiven, a dangerous, white supremacist organization.  *See Riley*, 995 F.3d at 1280 ("Violent offenders are often good candidates for upward variances."); *cf. also United States v. Schmidt*, 930 F.3d 858, 868 (7th Cir. 2019) ("[The defendant's] radical belief in the superiority of one race over all others, and his communication of that belief . . . revealed the danger of returning him to society" and "the expression of these desires, combined with a record of repeated violations of law, evinced a willingness to continue on a path of lawlessness in the absence of significant correction.").  The court also noted that Mikkelson had committed many prior crimes and was on probation while he committed these offenses, which were also aggravating circumstances.  *See Butler*, 39 F.4th at 1355; 18 U.S.C. § 3553(a)(1) (instructing courts to consider "the history and characteristics of the defendant").  The district court's consideration of these factors was directly relevant and provided a "compelling" reason that gave "support [to] the degree of the variance" the court imposed.  *Dougherty*, 754 F.3d at 1362.

The district court also explicitly considered and weighed mitigating facts about Mikkelson's life.  *Amedeo*, 487 F.3d at 833;

*Butler*, 39 F.4th at 1355.  It noted his struggles with substance abuse, his "very severe childhood," and his mental health issues.  The district court simply found that these mitigating facts did not outweigh the highly aggravating facts mentioned above.  *See Butler*, 39 F.4th at 1355 ("In fact, a district court may attach great weight to one § 3553(a) factor over others.").  Moreover, Mikkelson's 192-month sentence is well below the 20-year maximum sentence for Mikkelson's convictions, indicating reasonableness.  *Riley*, 995 F.3d at 1278.

Mikkelson's main argument on appeal appears to be that the district court may have been too focused on specific deterrence rather than general deterrence, but the court's focus on this factor does not reflect an abuse of discretion.  As discussed above, the district court was given broad leeway to consider the deterrent effect of its sentence on Mikkelson himself—as that was relevant to his "history and characteristics," and the need "to protect the public" from future crimes he may commit, 18 U.S.C. § 3553(a)(1), (2)(C)—and Mikkelson's extensive prior criminal history gave good reason for the district court to do so.  *Butler*, 39 F.4th at 1355; *see also Shaw*, 560 F.3d at 1238-41 (upholding upward variance sentence, to the statutory maximum, based on "the need to protect society from" the defendant, who had a significant criminal history).

Our review of the substantive reasonableness of a sentence is deferential and Mikkelson has not shown that "the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of

18                Opinion of the Court                24-11393

reasonable sentences dictated by the facts of the case." *Early*, 686 F.3d at 1221 (quoting *Shaw*, 560 F.3d at 1238); *see also Butler*, 39 F.4th at 1355; *Gonzalez*, 550 F.3d at 1324. Therefore, we reject Mikkelson's substantive reasonableness challenge as well.

## IV. CONCLUSION

For the reasons we have explained, we affirm Mikkelson's sentence.

**AFFFIRMED.**