[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-13983

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CRYSTAL HALI ORR,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00111-KD-MU-5

————————————————

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Crystal Orr appeals her convictions for conspiracy to possess and distribute controlled substances and possession of methamphetamine with the intent to distribute. She argues that the district court plainly erred by finding that her plea was knowing and voluntary.

After careful consideration, we disagree and affirm her convictions.

**I.**

A grand jury indicted Orr and 15 codefendants on charges related to a conspiracy to possess and distribute controlled substances. Specifically, Orr was charged with conspiracy to possess and distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841 (a)(1), (b)(1)(A) (Count 1), and possession of approximately 447.1 grams of methamphetamine (actual) with the intent to distribute also, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 17). Under a plea agreement, Orr pled guilty to both counts.

Because Orr challenges the knowing and voluntary nature of her guilty plea, we review the plea agreement and change-of-plea proceedings in some detail.

In her plea agreement, Orr waived her rights "to plead not guilty," "[t]o have a trial by an impartial jury," "to confront and

cross-examine witnesses and to call witnesses and produce other evidence in her defense[,] and" "[t]o not be compelled to incriminate [her]self." She also acknowledged that her under-oath statements relating to her guilty plea could later be prosecuted for perjury or for making false statements.

In return for Orr's guilty plea, the government promised to recommend that Orr "be sentenced at the low end of the advisory sentencing guideline range." And Orr promised that, if the government gave her the opportunity to cooperate, she would provide truthful, complete information and other assistance to law enforcement. Still, the government retained the discretion to determine whether Orr gave substantial assistance. If it found that she did, the government "agree[d] to move for a downward departure in accordance with [U.S.S.G. §] 5K1.1." In exchange for these undertakings, Orr waived her right to appeal unless the sentence exceeded the statutory maximum or the guideline range or if Orr claimed ineffective assistance of counsel.

Also in the plea agreement, Orr promised that she spoke with her attorney, understood her rights, and voluntarily agreed. And Orr agreed that the plea agreement's factual recitation—consisting of 17 pages—was true, and the government could have proved the offenses detailed in it beyond a reasonable doubt had the case gone to trial.

Orr's attorney also signed the end of the plea agreement. By her signature, Orr's attorney agreed that she fully explained Orr's rights to Orr, discussed the factual recitation with Orr, and believed

Orr was knowingly and voluntarily entering the plea agreement and stipulating to the factual recitation.

Besides the plea agreement, Orr and her attorney also both signed the factual recitation. That document included the offense elements and evidence of Orr's involvement with the drug distribution conspiracy.

At Orr's change-of-plea hearing, the district court placed Orr under oath and explained that it must determine that Orr was voluntarily and competently deciding to plead guilty. In response to the district court's questions, Orr confirmed and testified that she was 33 years old, had graduated from high school, and could "read, write, and understand" English. Orr said she had no difficulty communicating with her lawyer, had never been treated for a mental illness nor for a drug addiction, and she was not "under the influence of any drug, alcohol, or proscribed medication."

Next, the district court asked, and Orr confirmed, that she had discussed with her attorney the charges, the facts of the case, and "possible defenses if [she] chose to go to trial." The district court also asked if Orr was satisfied with her attorney's "advice to enter a plea of guilty" and "her representation throughout this case." Orr agreed she was.

The district court also asked, and Orr confirmed, that she had read and discussed the plea agreement with her attorney before signing it. Then the district court highlighted a few parts of the plea agreement, including that the government would recommend a low-end guidelines sentence if Orr pled guilty and that Orr

waived her right to appeal unless the district court gave her an above-statutory-maximum sentence or an above-guidelines sentence. Once again, Orr confirmed that she understood those aspects of the plea agreement.

The district court asked if "anybody already promised . . . [Orr that she would] receive a certain sentence in this case," and Orr said, "No." Then the district court had Orr confirm her understanding that her plea agreement gave her an opportunity to cooperate and if the government found that she did cooperate, the government would ask the district court "to go below the guidelines." Again, Orr confirmed her understanding that that was the case.

The district court noted that Orr's conviction would carry with it a "penalty of 10 years to life, 10 million-dollar fine, [5] years supervised 10 release and a [100] dollars special assessment as to counts [1] and 17." And the court explained that Orr would receive less than 10 years only if the government filed a downward-departure motion or if the safety valve applied. Orr and the government decided to resolve Orr's safety-valve eligibility later, but Orr noted that she wanted to plead guilty even if the safety valve did not apply.

The district court asked Orr if "anybody [had] tried to force [her] to plead guilty today," and Orr said, "No."

Orr also acknowledged that, because this offense was a felony, she would likely not be able to vote, hold public office, or own a firearm. The district court asked, and Orr confirmed, that she discussed the sentencing guidelines with her attorney, she

understood the guidelines were advisory, and she understood that the mandatory minimum was not advisory "if it applie[d]."

Then the district court reviewed the rights Orr would give up if she pled guilty. It stated,

> Now, you have a right to continue in your plea of not guilty and we would have a trial. At trial you would be presumed to be innocent. The government would have to prove your guilt beyond a reasonable doubt. At trial you'd have the right to the assistance of counsel, you'd have the right to cross-examine the government's witnesses, you'd have the right to compel witnesses to attend the trial on your behalf. You'd also have the right to choose to testify or not testify. If you chose not to testify, that fact could not be used against you. But do you understand by pleading guilty today you are giving up those rights and there will not be a trial?

Orr responded, "Yes, ma'am."

During the hearing, the government summarized the charged offenses, as well as their elements, and noted what the government's evidence would show: Orr provided 447.1 grams of methamphetamine to a government informant on a codefendant's command because she was a part of his drug-distribution business. Orr "admitted [to] her participation in the drug distribution scheme," and agents found a firearm and "about 175 mushrooms containing a controlled substance" in her home, which Orr

admitted was a storage place for the conspiracy's "drugs and drug proceeds."

At the end of the government's summary, the district court asked Orr if she "agree[d] [that] the government could prove those facts beyond a reasonable doubt." Orr began to cry, and the district court arranged for Orr to be given a bottle of water. Orr explained that "she just had a baby last week," so the district court gave Orr a break to speak with her lawyer.

After a short recess, Orr agreed that the government would be able to prove the recited facts beyond a reasonable doubt. Then Orr pled guilty, and the district court accepted Orr's guilty plea, finding it to be knowing and voluntary. The court stated,

> It's the finding of the Court . . . that the defendant is fully competent and capable of entering an informed plea, the defendant's aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is accepted and you're adjudicated guilty of counts [1] and 17.

Orr did not object.

The presentence investigation report ("PSI") recommended a sentencing guidelines range of 262 to 327 months.

In a pre-sentencing motion, the government requested a downward departure to 131 months for Orr, pursuant to U.S.S.G. § 5K1.1, because Orr provided substantial assistance by giving information about her codefendants, admitting to selling methamphetamine, and being willing to act as a witness in a codefendant's trial.

At the sentencing hearing, the district court granted the government's motion.[1]    Ultimately, the court sentenced Orr to the mandatory minimum of 120 months of imprisonment followed by 5 years of supervised release.  The court explained it did so because of Orr's substantial assistance, lack of criminal history, and familial responsibilities.

Orr now appeals her conviction.  She argues that the district court plainly erred by finding that her plea was knowing and voluntary.  According to Orr, she was not fully informed (1) that her statements relating to her guilty plea could be the basis for a later prosecution for perjury or false statement; (2) of her right to a jury trial; (3) of her right to confront witnesses at a trial; (4) of the sentencing guidelines for her case; (5) of the charges against her; and (6) of the appeal waiver in her plea agreement.

**II.**

---

[1] The district court stated that the government recommended 141 months, when the government's motion actually recommended 131 months, but this error did not impact the district court's final, lower sentence.  (Doc. 776 at 2-3, 7; Doc. 741 at 2; Doc. 755 at 2).

When a defendant "fails to object to a Rule 11 violation in the district court, [we] review[]" for plain error. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). To establish plain error, the defendant must show that there was an error that was plain and that it affected her substantial rights. *Id.* If the district court committed an error that was plain and that affected the defendant's substantial rights, then we may "exercise [our] discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted, alteration adopted).

"[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 83 (2004). But we've said that a "strong presumption [exists] that statements made during the plea colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

Before a district court can accept a guilty plea, it must inform the defendant of her rights should she choose to plead not guilty. Those rights include a jury trial, representation by counsel, and confrontation of witnesses and presentation of evidence. *See* Fed. R. Crim. P. 11(b)(1)(B)-(E). The court must also ensure that the defendant understands the nature of the charges against her, the potential penalties, "the court's obligation to calculate" and consider her advisory guideline range, and any "plea-agreement

provision waiving the right to appeal or collaterally attack the sentence." *See* Fed. R. Crim. P. 11(b)(1)(G)-(N). Beyond these things, the court must explain that the defendant can be prosecuted for perjury for testifying falsely under oath. *See* Fed. R. Crim. P. 11(b)(1)(A). The court must also explain that a guilty plea waives the defendant's trial rights and must ensure that the plea is entered voluntarily and is supported by a sufficient factual basis. *See* Fed. R. Crim. P. 11(b)(1)(F), (b)(2)-(3).

In determining that a defendant's guilty plea is knowing and voluntary, the district court must conduct a plea colloquy to ensure that the three core concerns of Rule 11 are met: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Freixas*, 332 F.3d 1314, 1318 (11th Cir. 2003) (quotation marks omitted).

Regarding the first core principle, the district court must ensure that the plea "did not result from force, threats, or promises" not included in the plea agreement. Fed. R. Crim. P. 11(b)(2).

Whether the district court has complied with the second core principle depends on several factors, including the complexity of the offense and the defendant's sophistication and intelligence. *United States v. Presendieu*, 880 F.3d 1228, 1238-39 (11th Cir. 2018). There's "no rigid formula or mechanical rule for determining whether the district court adequately informed the defendant of the nature of the charges," and Rule 11 does not specifically require a district court to "list the elements of an offense." *Id.* at 1238

(quotation marks omitted). We have held that a defendant is adequately informed of the nature of the charges against her when the factual proffer "set[s] forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense." *Id.* at 1239.

And to comply with the third core principle, the district court must inform the defendant of the Rule 11 rights that she gives up by pleading guilty. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005); Fed. R. Crim. P. 11(b)(1).

If the defendant failed to object to her plea before the district court, failure to strictly comply with Rule 11 does not necessarily implicate a core concern, nor does it require reversal if the defendant fails to show prejudice. *Monroe*, 353 F.3d at 1356. While complete or near-complete failures to address a core concern will potentially be reversible, a "slip up" in which the district court forgets to explicitly cover an item in Rule 11, but otherwise adequately addresses the core concerns, is not a basis for remand. *See id.* at 1353–54.

And a court's failure to advise a defendant of each of the enumerated items, even if preserved, is harmless error if it does not affect the defendant's substantial rights. Fed. R. Crim. P. 11(h); *Dominguez Benitez*, 542 U.S. at 80-81. Information omitted from the plea colloquy also may not amount to reversible plain error if it is nonetheless contained in a plea agreement that the defendant admits at the hearing to having read and understood. *See Dominguez*

*Benitez*, 542 U.S. at 85; *United States v. Clark*, 274 F.3d 1325, 1330 (11th Cir. 2001).

Here, Orr has not shown reversible error. The district court sufficiently addressed each of the core principles under Rule 11. Not only that, but the detailed plea agreement, which Orr claimed at the change-of-plea hearing to have read and discussed with her attorney, addressed each of Orr's Rule 11 concerns in detail. Plus, Orr has failed to show that any error affected her substantial rights, as she was properly informed of the consequences of her plea and chose to proceed with her guilty plea under the plea agreement.

For these reasons, we affirm the judgment of the district court.

**AFFIRMED.**